ECHTERLING, ET UX *v.* KALVAITIS, ET UX.

[No. 29,294.   Filed May 18, 1955.   Rehearing denied
January 27, 1956.]

*William L. Travis, Palmer C. Singleton, Jr.* and *Travis & Tinkham* (of counsel), all of Hammond, for appellants.

*Hanley & Hanley,* of Rensselaer, and *Roberts & Roberts,* of Lowell, for appellees.

LEVINE, J.—This cause was submitted to this court on a petition to transfer from the Appellate Court, where the judgment of the trial court was reversed. (*Echterling* v. *Kalvaitis* [1955], 123 N. E. 2d 465.)

The facts are set forth correctly in the opinion of the Appellate Court, *supra,* as follows:

"In 1889 one Edward Fisher owned the southeast and southwest quarters of the southeast quarter of section 31, township 33 north, range 8 west, in Lake County, Indiana. In 1906 the common ownership of these quarter-quarter sections of land was separated and through a series of mesne conveyances the record title to the southwest quarter of the southeast quarter of said section now rests in the appellants and title to the southeast quarter of the southeast quarter thereof rests in the appellees. In 1906 there was a barbed wire fence, running north and south ten feet west of the quarter-quarter section line, separating these two tracts of land and extending the full length thereof. The evidence is silent as to who built this fence but it was sold in 1906 and its course across the land deviated from a straight line in places. The inference is strong that it was built when the two tracts were under one ownership but whether it was built to separate them under the mistaken impression that it was on the quarter-quarter section line or for other purposes is pure surmise or guess. Nor is there any evidence as to whether or not said tracts of land were sold and purchased by the subsequent owners with reference to said fence as the dividing line between them. It is clear however that from 1906 until this controversy developed it was continuously maintained albeit in a rather makeshift manner at times. The appellants also own 80 acres of land immediately south of and adjoining the appellees' land above described which was separated therefrom by a woven wire fence for half the distance, built by the appellants in 1950, and an old hedge fence for the remainder of the way. This east and west fence is on the section line and there is no dispute between the parties as to its proposed location. In view of the condition of the above fences

both parties agreed on the necessity of refencing but deemed it advisable to have a legal survey made pursuant to §49-3311 et seq., Burns' 1951 Replacement, in order to save future dispute as to boundary lines. Such a survey was made in all respects in conformity to the statute and it was thereby established that a strip of land 10 feet in width, to which the appellants have record title, lies on the appellees' side of said fence. The appellants thereupon began the construction of a partition fence along the line of said survey which the appellees promptly tore down. This precipitated the present law suit which is a proceeding in equity brought by the appellants to compel the appellees, by judicial order, to construct half of all partition fences on their mutual boundary lines as determined by said statutory survey. It also seeks to enjoin the appellees from interfering with the appellants in the erection of their half of said fences and for damages suffered by reason of the appellees' alleged unlawful conduct. The appellees answered by way of a cross-complaint in which they claim title by adverse possession to the 10-foot strip between the property to which they have record title and the old north and south fence. Upon the trial of the case the court found against the appellants on their complaint and for the appellees on their cross-complaint and quieted their title to said 10-foot strip. The appellants appealed asserting that such decision is not sustained by sufficient evidence and is contrary to law."

The Appellate Court considered only the evidence of adverse possession from 1906 to 1927, because of the 1927 act (Acts 1927, ch. 42, §1, p. 119, being §3-1314, Burns' 1946 Replacement). This act provides as follows:

"Hereafter in any suit to establish title to lands or real estate no possession thereof shall be deemed adverse to the owner in such manner as to establish title or rights in and to such land or real estate unless such adverse possessor or claimant shall have paid and discharged all taxes and special as-

sessments of every nature falling due on such land or real estate during the period he claims to have possessed the same adversely. . . ."

It becomes necessary, therefore, to consider the effect of the statute when applied to the facts before us. To do this, we must examine the language of the ■ act and look to the intention of the Legislature in that enactment. Historically in Indiana, the adverse possessor's rights are acquired in twenty years under the statute of limitation, §2-602, Sixth, Burns' 1946 Replacement (1953 Supp.). The 1927 act was enacted to halt the pernicious effect of squatters upon lands where title holders had paid taxes on lands owned by them, but where possession of parts of the land was usurped by squatters for long years without claim of title or payment of taxes. These squatters eventually claimed they became seized with title through adverse possession. *Philbin v. Carr* (1921), 75 Ind. App. 560, 129 N. E. 19, 706.

Quoting from Commentaries on the Public Acts of Indiana, 1927—II, the Adverse Possession Act, by G. A. Farabaugh and Walter R. Arnold, Indiana Law Journal, Vol. 4, pp. 113, 114:

> ". . . statutes of limitations are creatures of the legislature. Without legislation they do not exist, and, in the absence of express constitutional inhibitions, the legislature is at liberty to amend or repeal statutes of limitations, *so long as no vested right is affected.* This latter exception is important to bear in mind in construing the operation of the act. . . . That title to real estate which has been acquired by adverse possession for the statutory period cannot be constitutionally affected by a change in the statute after the period has run, is well settled. Hence, we are warranted in assuming, without further analysis, that the Act does not and cannot affect the rights which had fully ripened into title before the act was passed notwithstand-

ing no legal proceedings were taken to establish it, because once title has ripened, nothing further by way of proceedings is necessary to fortify the vested right against aggression. . . . the statute is readily susceptible to a construction which excludes from its operation rights and interests vested before the statute became operative."

See *Philbin* v. *Carr* (1921), 75 Ind. App. 560, 129 N. E. 19, 706, *supra,* and *Craven* v. *Craven* (1914), 181 Ind. 553, 103 N. E. 333, 105 N. E. 41.

As to reason for adverse possession, see Tiffany, *Real Property* (3d ed.), Vol. 4, §1134, p. 406, Theory of Legislation.

The Indiana view of adverse possession is set out in *Craven* v. *Craven, supra,* where the court said (p. 560 of 181 Ind., p. 41 of 105 N. E.):

"The intention is not to punish one who neglects to assert his right, but to protect those who maintained the possession of land for the time specified by the statute, under claim of right or color of title."

See Notre Dame Lawyer, Vol. 16, No. 3, p. 216, March, 1941, Commentary by James H. Neu.

The act of 1927 must be construed as being supplemental to the statute of limitations, and not as superseding it.

The court takes judicial knowledge of the fact that complete legal descriptions of real estate are not present on the tax duplicates issued by county or city treasurers. They are usually sketchy and inaccurate. 2 C. J. S., Adverse Possession, §71 (2), p. 588; *Hawley et al.* v. *Zigerly et al.* (1893), 135 Ind. 248, 34 N. E. 219; *Marley* v. *State ex rel. Chenoweth, Auditor of Martin County* (1897), 147 Ind. 145, 46 N. E. 466.

It would seem to us that, in view of the foregoing, where continuous, open, and notorious adverse possession of real estate has been established for twenty years to a contiguous and adjoining strip of land such as that here in question, and where taxes have been paid according to the tax duplicate, although said duplicate did not expressly include that strip, adverse possession is established to that strip even though the taxes were not paid by the adverse claimant. An example might be where one has record title to Lot No. 1 and has erected a building on that lot, which, twenty years later, is found by some surveyor to be one foot over on an adjoining lot, No. 2—the fact that the owner of Lot No. 1 was assessed for improvements (the building) and real estate (Lot No. 1) would be sufficient to comply with the statute as to payment of taxes.

In the case at hand there was ample evidence of open, adverse possession of this strip of land indicated by the old fence, especially when evidence after 1927 is considered.

It is well established that this court will not weigh the evidence and substitute its judgment for that of the trial court, and where there is any substantial evidence of probative value to sustain the decision of the trial court it will be sustained. *Perrin National Bank et al.* v. *Thompson* (1898), 20 Ind. App. 649, 50 N. E. 410; *Elkhart Paper Co.* v. *Fulkerson* (1905), 36 Ind. App. 219, 75 N. E. 283; *Associates Investment Co.* v. *Shelton* (1952), 122 Ind. App. 384, 105 N. E. 2d 354; *McHenry* v. *Foutty* (1945), 223 Ind. 335, 60 N. E. 2d 781.

Substantial evidence shows that appellees and their predecessors in title had continuous, open, and noto-

rious, adverse possession of land up to an established boundary-line fence for a period of twenty years, which conferred fee-simple title to the strip in question by operation of law, and the original title of appellants was thereby extinguished. *Wingler* v. *Simpson* (1884), 93 Ind. 201; *Riggs* v. *Riley* (1888), 113 Ind. 208, 15 N. E. 253; *Dyer et al.* v. *Eldridge et al.* (1894), 136 Ind. 654, 36 N. E. 522; *Palmer* v. *Dosch et al.* (1897), 148 Ind. 10, 47 N. E. 176; *Wood* v. *Kuper* (1898), 150 Ind. 622, 50 N. E. 755; *Pittsburgh, etc., R. Co.* v. *Stickley* (1900), 155 Ind. 312, 58 N. E. 192; *Helton* v. *Fastnow* (1904), 33 Ind. App. 288, 71 N. E. 230; *Logsdon* v. *Dingg* (1904), 32 Ind. App. 158, 69 N. E. 409; *Rosenmeier* v. *Mahrenholz* (1913), 179 Ind. 467, 101 N. E. 721; *Grim* v. *Johns* (1916), 61 Ind. App. 514, 112 N. E. 13; *Scheigert* v. *Boyer* (1919), 69 Ind. App. 674, 122 N. E. 670; *Cooper* v. *Tarpley* (1942), 112 Ind. App. 1, 41 N. E. 2d 640; *Norling* v. *Bailey* (1951), 121 Ind. App. 457, 98 N. E. 2d 513, 99 N. E. 2d 439.

The judgment of the trial court is affirmed.

Henley, C. J., and Achor, Bobbitt, and Emmert, JJ., concur.

NOTE.—Reported in 126 N. E. 2d 573.