SMITH ET AL. *v.* BROWN ET AL.

[No. 18,706. Filed June 5, 1956.]

546

*Elba L. Branigin, Jr., Thurman M. Demoss,* and *Branigin & Branigin,* all of Franklin, for appellants.

*James F. Griggs,* of Franklin, for appellee.

BOWEN, J.—In the court below the appellants filed a complaint for a declaratory judgment seeking to have the boundaries of a certain lot determined. Issues were joined on the appellants' complaint which alleged that they claimed under the description of a certain deed, and that they were entitled to a strip of land on the south side of the portion of such lot conveyed to the appellants, contrary to the findings of the surveyor at the time a survey was made of such lot. The complaint alleged that a dispute existed between the appellants and appellees who owned a portion of a lot on the south side of appellants' land, and that there is an existing controversy between the parties which would result in protracted litigation unless resolved and determined by the court. The appellees filed an answer in admission and denial under the rules and the cause was tried by the court.

The lower court by its judgment found and determined that the appellees were entitled to the owner-

ship of the strip of land in question by virtue of adverse possession. The appellants filed a motion for a new trial on the grounds that the finding and decision of the court is not sustained by sufficient evidence and is contrary to law.

Sole error assigned for reversal is the action of the court in overruling appellants' motion for a new trial.

The controversy between the parties to this appeal is whether the appellants own all of Lot numbered eleven (11) in Homer J. Hall's Sub-division of Lot numbered five (5) in John Clarke's First Addition to the City of Franklin, Indiana, as shown by Plat Record No. 1, page 84, of the plat records of the Recorder's Office of Johnson County, Indiana, excepting therefrom sixty (60) feet by parallel lines off the entire south side of said Lot numbered eleven (11), as such line was determined by a legal survey in 1949.

The appellees appear to hold the record title to the balance of said lot, to-wit: sixty (60) feet by parallel lines off the entire south side of lot numbered eleven (11). However, the appellees claim to own, by virtue of adverse possession, a strip of ground on the south side of the tract of land owned by appellants and to the north of the sixty (60) feet by parallel lines off of the south side of said lot numbered eleven (11) owned by appellees.

The lower court found for the appellees and that they were the owners by adverse possession of said strip of land in controversy, which is described in the finding and decree of the lower court, and which is a quadrangular strip of land off of the south side of appellants' land being seventeen (17) feet wide on the west end and thirteen and one-half (13½) feet wide on the east end and extending across the entire width of the lot.

From the evidence it appears that the White Star Oil Company of Eaton, Ohio, [the Franklin Motor Service referred to in the evidence, being an operating company for the White Star Oil Company] originally owned all of said lot numbered eleven (11) and that in 1927 such oil company sold sixty (60) feet by parallel lines off of the south end of said lot to one Nelson Pangburn and wife, the said Nelson Pangburn being an employee of such company, and Pangburn built a house on it. In building his house Mr. Pangburn put a garage in the basement on the north side at the east end of the house. He put in a gravel drive which transversed part of the land in dispute at the west end of such land and he occupied and used such drive. His grantor, who was also his employer, put a hedge fence line to the north of Mr. Pangburn's lot, which included the lands in question which are claimed by adverse possession. The land was subsequently conveyed to one Curtis Moore and his wife who in turn conveyed the real estate to the appellees, Denzil R. Brown and Lillian B. Brown. A dispute arose in 1949 between one David E. Curry, who with his wife were the then owners of appellants' land, and appellees, concerning the boundary line of the lots in question, and Mr. Curry ordered a legal survey, which was had. Following the setting of stakes by the County Surveyor an appeal was filed by appellees appealing to the Johnson Circuit Court the legality and correctness of such survey, and this appeal was later consolidated with this cause. Following the legal survey appellants' predecessor in title, Mr. Curry, tore down the hedge between the appellants' and appellees' real estate and appellees secured an order restraining Mr. Curry from further action and trespass.

There is no question but that the recorded descriptions show the appellants to be the owners of the land in question, and the question we are called upon to determine is whether there is substantial evidence to support the trial court's finding and decision that title to the strip of ground off of the south side of appellants' real estate was acquired by appellees and their predecessors in title by operation of law through adverse possession.

The appellants' first specification is that the court's finding that the appellees and their predecessors in title had held this land adversely for more than twenty-one years was not supported by any evidence. However, the basis of this preliminary contention by appellants seems to be that since the appellees themselves did not own or possess such property for such full period, and the fact that the appellees came into ownership and possession in the spring of 1946, would be insufficient to support the judgment for adverse possession. In this contention the appellants are in error. It is well settled that the statutory period of adverse possession need not be maintained by one person and successive periods of adverse possession may be tacked together to constitute the necessary period for adverse possession to defeat the title of the record owner by continued disseizin for more than twenty years. The requisite privity is privity of possession and denotes merely a succession of relationship to the same thing. *Cooper* v. *Tarpley* (1942), 112 Ind. App. 1, 41 N. E. 2d 640; *McEntire and Others* v. *Brown* (1867), 28 Ind. 347; *Doe* v. *Brown* (1853), 4 Ind. 143; 1 Am. Jur., Adverse Possession, §151 to §158, pp. 879 to 884.

The appellants further assert that even if appellees' possession may be tacked to predecessors in title who

possessed the land in question for the requisite period, that even then, such tacking in the instant case lacks the necessary proof to support the court's finding, and that the appellees have failed to sustain the burden of proof imposed on the disseizor in accordance with the established rule that one claiming title by adverse possession against one who is the holder of the legal title must establish such claim by strict, clear, positive and unequivocal evidence. *Philbin* v. *Carr* (1921), 75 Ind. App. 560, 129 N. E. 19, 129 N. E. 706; *Coal Cr. Coal Co.* v. *Ch., T. H. & S. E. Ry. Co.* (1944), 114 Ind. App. 627, 53 N. E. 2d 179; *Sheets* v. *Stiefel* (1947), 117 Ind. App. 584, 74 N. E. 2d 921.

It therefore becomes necessary for us to fully examine the facts in the record before us and the legal principles applicable to such facts in the light of this latter contention by the appellants.

From the record it appears that when appellees' predecessor in title, Nelson Pangburn, received a deed for the south sixty feet by parallel lines off of the south side of such lot from his grantor and employer, that such grantor, by mistake or otherwise, planted a hedge fence which was north of the land deeded to Mr. Pangburn and included the lands, title to which is in dispute in this cause. Mr. Pangburn testified that he occupied space south of the honeysuckle hedge and occupied it to the extent that he took possession and used the driveway which was south of the hedge and which the evidence shows without dispute was located on a portion of the lands in dispute, and that this use was continuous. He testified that the yard was kept up to the honeysuckle hedge by help sent from the oil company for whom he worked, and was cleaned and mowed. Mr. Curtis Moore, who purchased the property from Mr. Pangburn, testified that Mr. Pangburn showed him

what the north boundary line was and that he said that the curbing [on the north side of the land in dispute] was the line, and Mr. Moore took for granted the shrubbery went along with it. This curbing in question was located adjacent to the line of shrubbery in a slightly curving direction, and went back eastwardly from the west edge of the lot twenty-five to thirty feet. Moore further testified that he maintained the property to the line, trimmed the hedge, altered the property by making a new drive over the old existing drive, and that he occupied the land to the curbing and hedge without any complaint or difficulty from the persons holding the land on the north.

While the decisions relating to the acquisition of title to land by adverse possession are legion, the general rule as to the requisite proof required to establish title by adverse possession are well known and well settled. It is well settled that the location of a division boundary line, acquiesced in and acted upon, and the use and improvement of such premises by each of the owners on each side of the line for twenty years, becomes binding as the true line. The fact that such line so established as aforesaid, is contrary to the line, as run by the surveyor, makes no difference. *Helton* v. *Fastnow* (1904), 33 Ind. App. 288, 71 N. E. 230; *Dyer et al.* v. *Eldridge et al.* (1893), 136 Ind. 654, 36 N. E. 522; *Palmer* v. *Dosch et al.* (1897), 148 Ind. 10, 47 N. E. 176; *Wood* v. *Kuper* (1898), 150 Ind. 622, 50 N. E. 755.

In order to establish title by adverse possession such possession must be actual, visible, open, notorious, exclusive, hostile, under claim of ownership, and continuous for the statutory period of twenty years. *Cooper* v. *Tarpley, supra.*

While the foregoing general rules are well estab-

lished in our case law, there is such a wide variation in the facts of each particular case that each case is more or less unique. It can hardly fairly be said that the acts necessary to establish adverse possession to a tract of farm land could serve as authoritative precedent for acts which would entitle a court to determine the question of adverse possession of a city lot. The standard to be applied to any particular tract of land seems to be whether the possession comports with the ordinary management of similar lands by their owners, and if so, it furnishes satisfactory evidence of adverse possession. *Abel* v. *Love* (1924), 81 Ind. App. 328, 143 N. E. 515; *Clark* v. *Potter* (1876), 32 Ohio St. 49. In *Abel* v. *Love, supra,* which involved a strip of land off of a city lot, the court stated as follows:

".  .  . it may be safely said that where visible acts of ownership have been done upon the land which, from their nature, indicate a claim of ownership of the property and are continued sufficiently long, with the knowledge of the holder of the legal title, without interruption or adverse entry by him, such acts are evidence of an ouster.

" 'Whenever the possession is of a such a character that ownership may be inferred therefrom, then the possession ordinarily may be presumed to be hostile to the rights of the true owner; that is, if a party places permanent structures upon the land belonging to another, and uses the land and structures the same as *an owner ordinarily uses his land,* then, in the absence of something showing a contrary intention, a claim of ownership may be inferred in favor of the party in possession.' *Pioneer, etc., Co.* v. *Board of Education* (1909), 35 Utah 1, 99 Pac. 150, 136 Am. St. 1016, 1019." (Our emphasis).

Considering the facts of the instant case in the light of the foregoing rules we find that the strip of land in

question for a continuous period of more than twenty years was separated by a hedge fence line from the lands of appellants and their predecessors in title, and for a long period of time a concrete curbing existed close to the line of such hedge back for a distance of twenty-five to thirty feet. The original predecessor in title of appellees, during the time when the running of the twenty years adverse possession was begun, built a driveway on part of the land in question. His yard was kept clean and mowed by help sent to him from the oil company, his employer and grantor. The subsequent grantor of Pangburn, Moore, testified that Pangburn showed him the north boundary line, and that the curbing on the north side of the land in dispute was such line. Moore continued to maintain the property to the line of the hedge fence, altered the property by making a new drive over the old existing drive, and occupied the land to the curbing and hedge without any complaint or difficulty from persons holding title to the land on the north. Moore further testified that he stopped tenants residing on appellants' land from throwing garbage and tin cans on the property in question. The Moores conveyed the property to the appellees, Denzil R. Brown and Lillian B. Brown. The appellee, Denzil R. Brown, testified that when he purchased the property from Moore that he showed him the north line and that he described the concrete curb and the shrubbery as such north line, and the appellee further testified that he used the entrance and driveway which crossed the land in dispute and put black top and crushed stone on it. He also testified that he trimmed the shrubbery, mowed the grass, and planted flowers on the land in dispute, and that he had no knowledge concerning the dispute of the property line until the spring of 1949 [which period was after the

20 year period of alleged disseizin]; that when the dispute came up about the property in 1949, his wife chased people off the property, and that he had told appellants' predecessor in title to stay off of it, and that following such dispute the present litigation 'followed.

We feel that there is sufficient evidence of probative value in this record to have justified the trial court in arriving at the conclusion that appellees and their predecessors in title had continuous, actual, visible, open, notorious, and exclusive adverse possession of the strip of land in question, and continuously asserted acts of ownership for the requisite period of twenty years, which was sufficient to confer title by adverse possession to the strip of land in question by operation of law, and the original title of appellants was thereby extinguished.

While an inference might have been drawn from Pangburn's testimony that his use of such real estate might have been characterized as permissive, the establishment of the hedge fence and his use of the land as a part of his property, under the circumstances of the record and the continuous successive use by subsequent grantors, was clearly sufficient to have sustained the reasonable conclusion reached by the trial court to the contrary. When we are confronted by a record such as the one before us in the instant case, with sufficient evidence of probative value to prove certain facts, and other evidence of probative value tending to prove the contrary, we have nothing upon which to act, nor can we substitute our judgment for that of the trial court.

The appellants further assert that the Indiana legislature has added another element requisite to the estab-

lishment of title by adverse possession, citing Acts 1927, Ch. 42, §1, p. 119, §3-314, Burns' 1946 Replacement, and insist that the appellees have not established that they and their predecessors in title have paid taxes on the land claimed throughout the period of possession. While the evidence is conflicting as to this, and evidence appears from which an inference could have been drawn that taxes were paid on seventy-eight feet of assessed frontage for a portion of this period, this proposition asserted by the appellants points up the reasoning of our Supreme Court in the recent case of *Echterling* v. *Kalvaitis* (1955), 235 Ind. 141, 126 N. E. 2d 573, in which the court stated:

> "The court takes judicial knowledge of the fact that complete legal descriptions of real estate are not present on the tax duplicates issued by county or city treasurers. They are usually sketchy and inaccurate. 2 C. J. S., Adverse Possession, §71 (2), p. 588; *Hawley* v. *Zigerly* (1893), 135 Ind. 248, 34 N. E. 219; *Marley* v. *State ex rel. Chenoweth* (1897), 147 Ind. 145, 46 N. E. 466.
>
> "It would seem to us that, in view of the foregoing where continuous, open, and notorious adverse possession of real estate has been established for twenty years to a contiguous and adjoining strip of land such as that here in question, and where taxes have been paid according to the tax duplicate, although said duplicate did not expressly include that strip, adverse possession is established to that strip even though the taxes were not paid by the adverse claimant."

It would appear that our Supreme Court has interpreted the 1927 Act which added the requirement of payment of taxes to the established requirements of the acquisition of title by adverse possession as being supplementary to the statute as a disseizin and does not supersede the same.

For the reasons given herein the trial court did not err in overruling appellants' motion for a new trial, and the judgment of the lower court is hereby affirmed.

NOTE.—Reported in 134 N. E. 2d 823.