**Russell McCARTY, Appellant (Plaintiff Below),**

v.

**Carl A. SHEETS and Anna L. Sheets, Appellees (Defendants Below).**

No. 3–877A209.

Court of Appeals of Indiana, Third District.

June 27, 1979.

Rehearing Denied Aug. 14, 1979.

---

4. Repealed by Acts of 1974, P.L. 142, § 3.

Marshall F. Kizer, Plymouth, for appellant (plaintiff below).

Frederick E. Rakestraw, Rochester, for appellees (defendants below).

STATON, Judge.

Carl A. Sheets and Anna L. Sheets owned a garage which extended some 1.4 feet to 2 feet beyond their title property line. Russell McCarty sued to compel Sheets to move the garage. Sheets counterclaimed for quiet title. The trial court found against McCarty in his suit, and found for Sheets on the counterclaim. McCarty appeals. We affirm.

## I.

### Negative Judgment

McCarty first contests the judgment of the trial court which denied him relief on his complaint. He argues that the judgment is contrary to the evidence. Such an argument presents no error because he is appealing from a negative judgment. *See Hiatt v. Yergin* (1972), 152 Ind.App. 497, 284 N.E.2d 834; *see also Link v. Sun Oil Co.* (1974), 160 Ind.App. 310, 312 N.E.2d 126; *Sekerez v. Bd. of Sanitary Comm'rs* (1974), 160 Ind.App. 13, 309 N.E.2d 460, 312 N.E.2d 98; *Inkoff v. Inkoff* (1974), 159 Ind.App. 239, 306 N.E.2d 132; *Lindenborg v. M & L Builders* (1973), 158 Ind.App. 311, 302 N.E.2d 816; *Jameson v. McCaffry* (1973), 157 Ind.App. 480, 300 N.E.2d 889.

## II.

### Counterclaim—Quiet Title

Title was quieted in Sheets. The court awarded a total of four feet and two inches of uniform width along Sheets' west property line. McCarty asserts that such an award was erroneous in that even if Sheets had obtained title, by adverse possession, to the land upon which the garage was standing, the evidence does not support any award of more land.

It will facilitate discussion to illustrate the relative positions of the contiguous fees.

As can be seen from the sketch, the garage in dispute extends beyond Sheets' surveyed property line. (The sketch represents the property as surveyed in 1973.) The eaves of the garage extend one foot beyond the garage itself. McCarty purchased his property on January 14, 1967. Sheets had purchased their property on June 7, 1956. Evidence was admitted that at least the front portion of the Sheets' garage had been in its present location since before 1937.

Carl Sheets testified that he had mowed to the middle line between his garage and McCarty's garage. He "maintained it, protected it, cut dock out of it, thistles, and would rake the leaves off of it" continuously, from the time he took possession up to the present. He stated that he paid all taxes as they were assessed against his property. No one questioned the location of the garage until 1973 when McCarty complained about water damage from rain flow from Sheets' garage roof. One thing led to another, and McCarty had the property surveyed. Sheets paid half of the cost of the survey. When the survey was completed, Sheets attempted to conciliate by offering to erect eave troughs; Sheets even offered to pay McCarty for the disputed strip. McCarty remained adamant that Sheets must get his garage off of McCarty's property; McCarty then sued.

Despite any pacification efforts by Sheets, the evidence does support the trial court's judgment that Sheets already owned the disputed property, through adverse possession, at the time the controversy congealed. In *Rennert v. Shirk* (1904), 163 Ind. 542, 551, 72 N.E. 546, 549, it was held:

"In this State, when an owner of land, by mistake as to the boundary line of his land, takes actual, visible, and exclusive possession of another's land and holds it as his own continuously for the "statutory period of twenty years, he thereby acquires the title as against the real owner. The possession is regarded as adverse, without reference to the fact that it is based on mistake; it being *prima facie* sufficient that actual, visible, and exclusive possession is taken under a claim of right." (Citations omitted.)

The twenty-year possessory period necessary to acquire title by adverse possession, extant at the time of the Court's disposition of *Rennert,* was shortened to a period of ten years by the legislature in 1951. IC 1971, 34–1–2–2(6), Ind.Ann.Stat. § 2–602 (Burns Code Ed.).

Sheets had owned the property since 1956. He had therefore acquired title to the disputed strip of land by 1967, when McCarty purchased the adjoining property.

▪ Furthermore, the evidence clearly established that the position of the garage had remained unchanged since 1937. Periods of adverse possession can be tacked, from grantor to grantee. *Ft. Wayne Sm. & Ref. Wks. v. City of Ft. Wayne* (1938), 214 Ind. 454, 14 N.E.2d 556; *Smith v. Brown* (1956), 126 Ind.App. 545, 134 N.E.2d 823. The testimony of a neighbor supported the reasonable inference that Sheets' predecessors in title had occupied the disputed strip in much the same way that Sheets occupied it. Since Sheets' right to the property was established by adverse possession even *before McCarty bought the adjoining property,* it was immaterial whether Sheets participated in the survey or offered to buy the disputed strip. *See Rennert v. Shirk, supra; Rosenmeier v. Mahrenholz* (1913), 179 Ind. 467, 101 N.E. 721; *Grim v. Johns* (1916), 61 Ind.App. 514, 112 N.E. 13.

McCarty argues that the mistaken boundary cases have relied upon a physical manifestation of the boundary: a fence or shrubs. It is true that there is no *direct* evidence of such a symbolic, concrete division in this case. However, we are faced with the uncontroverted evidence that McCarty purchased the property in 1967 and did not even raise the question of boundary until 1973. Sheets himself had established his habits as to maintenance and mowing for at least eleven years before McCarty purchased the neighboring fee. Under the circumstances of this case, we do not believe that the absence of a fence or shrub should defeat Sheets' adverse title. We look only to the evidence or inferences which support the judgment of the trial court. *Haynes v. Brown* (1949), 120 Ind. App. 184, 88 N.E.2d 795. The trier of facts is free to consider all circumstances which might in any way affect credibility of evidence. *Hays v. Hartfield L–P Gas* (1974), 159 Ind.App. 297, 306 N.E.2d 373.

The trial court quieted title in Sheets to four feet two inches of property beyond his surveyed property line. The four feet two inches was intended to "give to [Sheets] the land located between the garage of [Sheets] and the garage of [McCarty] to a point half way between said buildings  . . . ." There was evidence to support this judgment. We affirm.

BUCHANAN, C. J. (by designation), concurs.

HOFFMAN, J., dissents with opinion.

HOFFMAN, Judge, dissenting.

I respectfully dissent to the majority opinion.

There is evidence that a portion of the garage sat on the land now owned by Russell McCarty for longer than 10 years. The court could find from all the evidence and reasonable inferences that the Sheets gained title to the portion the garage occupied by adverse possession.

However, evidence as to actual, visible and exclusive possession of any other land is as follows:

Transcript page 126—

Direct examination of Carl A. Sheets:

"Q. What parts or what territory around the garage have you used in your occupancy of the house? Have you used the land behind and to the side of the garage?

"A. I have mowed it, if you mean that.

"Q. All right.

"A. I have mowed it.

"Q. And how far—how far west have you mowed it, referring to the side of your garage?

"A. I mowed over to the middle to the line. I mowed it, maintained it, protected it, cut dock out of it, thistles, and would rake the leaves off of it for about twenty years.

"Q. All right and is that continuously from the time you took possession of that house up to the present time?

"A. For twenty years, yes.

"Q. During the period of time you've owned the property have you paid the taxes as they were assessed against your real estate?

"A. I have."

Transcript pages 136–137—

Cross-examination of Carl A. Sheets:

"Q. Now as I understand, when you were talking about mowing, cutting thistles, weeds, and pulling all of the bad things around the garage that you said that you had been doing this continuously for more than twenty years, is that correct?

"A. I have done it every year for twenty years.

"Q. Well you said something to the effect as I wrote it down here that you had done this for more than twenty years?

"A. Twenty years.

"Q. All right, did you—were you doing this before you bought the property?

"A. I—no.

"Q. In other words, you didn't go over there for Mr. Irie or Mrs. Irie or

whoever you bought it from to pull weeds?

"A. I did not.

"Q. And police that area, is that correct?

"A. I did not.

"Q. Does grass grow between the two garages?

"A. That is right. No, not between the two garages, no.

"Q. Well where did you mow this grass between the garages?

"A. I didn't mow between garages.

"Q. You didn't mow between the garages? Well were there any thistles between the garages?

"A. There were thistles between the garages.

"Q. And do you pull these or cut these out?

"A. I cut—yes, I did.

"Q. Well have you ever mowed between the garages?

"A. Not between the garages.

"Q. There just nothing grows in there does it?

"A. Nothing grows there.

"Q. The sun is shut out and it gets a lot of water between the two doesn't it?

"A. Some water."

There is not any other evidence or inferences from evidence except as set out above as to actual, visible, exclusive possession. The most that can be drawn from the above testimony is that Sheets did some yard work on the side of the garage and some behind the garage.

There is absolutely no evidence that Sheets did anything to a strip of land 4 feet and 2 inches wide along the whole side of McCarty's land.

No fence or markings of any kind showed where the boundary line existed. It is a sad day in Indiana when the courts take a man's land from him on evidence of mowing grass on the side and behind a garage.

I further question whether the requirements of IC 1971, 32-1-20-1 were met. The only evidence as to the payment of taxes appears on transcript page 126:

"Q. During the period of time you've owned the property have you paid taxes as they were assessed against your real estate?

"A. I have."

Such evidence does not meet the requirement of the statute nor the more liberal requirements set out in *Echterling et ux. v. Kalvaitis et ux.* (1955), 235 Ind. 141, 126 N.E.2d 573.

The right of an individual to own real estate and feel secure in ownership has long been held sacred in this state. The majority opinion of this Court has buried that principle six feet under the ground.

I would reverse and remand for the trial court to correct its judgment.