Richard GREENE and Linda Greene,
Husband and Wife, Appellants
(Defendants Below),

v.

Robert J. JONES and Janet R. Jones,
Husband and Wife, Appellees
(Plaintiffs Below).

No. 4-884A228.

Court of Appeals of Indiana,
Fourth District.

April 1, 1986.

Rehearing Denied May 9, 1986.

Robert L. Barlow, Cooper, Cox, Jacobs, Reed & Barlow, Madison, Frank E. Spencer, Indianapolis, for appellants (defendants below).

William Edward Jenner, Darrell M. Auxier, Jenner & Kemper, Madison, for appellees (plaintiffs below).

## MAJORITY OPINION

MILLER, Judge.

This appeal involves a property line dispute between two adjoining landowners in a residential subdivision of Jefferson County. Robert and Janet Jones brought an action to quiet title to a strip of land approximately seven feet wide running parallel to their western property line. The Jones property consists of Lot No. 2 in front and a portion of Lot No. 10 in the rear. The Greene property consists of Lot No. 1 in front and the remaining portion of Lot No. 10 in back. The trial court quieted title in the Joneses, finding they had adversely possessed the disputed strip for more than ten years. Richard and Linda Greene, the record owners of the disputed strip, now appeal raising these issues:

1) whether the judgment was contrary to law as to the disputed strip located in Lot No. 10, since the Joneses had not possessed that property for the statutory period of ten years; and

2) whether the evidence was insufficient to prove adverse possession as to Lot No. 1, since yard maintenance alone has been held insufficient evidence of control.

We reverse.

The Joneses purchased Lot No. 2 in 1970. At that time, their house was newly built and the yard had not been landscaped. Four flags were set at what the Joneses believed to be the corners of their lot. The two flags on the west side of their lot were set approximately seven feet west of the true property line. Apparently, all homes in that subdivision were built slightly to the west of the center of their lots. In 1974, the Joneses purchased a portion of Lot No. 10, located behind Lot No. 2. The boundary of this lot was also believed to extend seven feet beyond the true property line. The Greenes purchased Lot No. 1 and the remaining portion of Lot No. 10 in 1981. The discrepency in the boundary line between Lot Nos. 1 and 2 was discovered by the Greenes in 1983 when they had the land surveyed in order to construct a fence on the west side and a drainage ditch on the east side of their property. According to the survey, the Greenes' true eastern boundary line extends seven feet onto the Jones lot and the Greenes' gravel driveway encroaches seven feet onto the adjoining property to the west, a parcel of farmland. The Joneses thereafter brought suit, claiming they had acquired title by adverse possession to the seven foot strip running along the western boundary of Lot No. 1 and their half of Lot No. 10. The trial court found in their favor, and the Greenes appeal.

The Greenes first contend the trial court erred by quieting title in the Joneses property in relation to Lot No. 10 because the Joneses had not adversely possessed that lot for the required ten years.

■ We agree. The ten year period necessary to acquire title by adverse possession is a statute of limitations which runs against the titleholder. IND.CODE 34-1-2-2. If the titleholder fails to oust the intruder within the ten year period, title to the property vests in the intruder if the other elements of adverse possession are present. *Kline v. Kramer* (1979), 179 Ind. App. 592, 386 N.E.2d 982.

■ In this case the evidence indicates that the Joneses possessed their portion of Lot No. 10 for only nine years. They purchased their portion of Lot No. 10 in 1974. The Greenes informed them of the proper boundary in 1983 and the instant suit was commenced on September 19, 1983. Because the statutory period has not yet expired, the Joneses cannot acquire title to the disputed strip of Lot No. 10 through adverse possession.[1] Thus, the Greenes, the record owners of the disputed strip, remain the owners of the disputed portion of Lot No. 10 in accordance with the legal description of their title. As a result, the trial court's judgment pertaining to Lot No. 10 is reversed.

As for the disputed boundary line separating Lot Nos. 1 and 2, we must also reverse the trial court's judgment because the actions of the Joneses are insufficient to establish adverse possession. In order for the Joneses to defeat the Greenes'

---

1. We note that in order to establish title by adverse possession, it is not necessary that the entire period of possession be maintained by one person, and successive periods of adverse possessors may be tacked together for the purpose of computing the duration of the period of possession, providing there is privity between successive adverse possessors. *See Ford v. Eckert* (1980), Ind.App., 406 N.E.2d 1209. Nevertheless, the Joneses are unable to employ the doctrine of tacking to extend the period of adverse possession because all of Lot No. 10 was owned by one person before the conveyance of a portion of it to the Joneses so that no property was adversely possessed before that conveyance.

record title to the seven foot strip of real estate in dispute through adverse possession, the Joneses were required to show the possession was actual, visible, notorious, exclusive, under a claim of ownership, hostile to the owner of record title, and continuous for the full period of the statute.[2]

The element of notorious possession was explained by our supreme court in *McCarty v. Sheets* (1981), 423 N.E.2d 297, 301, as follows:

> " 'It must be so conspicuous that it is generally known and talked of by the public—at least by the people in the vicinity of the premises. It must be manifest to the community. In the course of twenty years a visible occupancy naturally ought to become notorious. It ought to be so well known and commonly understood that the people residing in the neighborhood could testify with substantial unanimity concerning its existence. Where the people who passed frequently over and along the premises have been unable to see any evidence of occupancy, evidently the possession has not been of the character required by the rule. The purpose of this requirement is to support the principle that a legal title will not be extinguished on flimsy and uncertain evidence. Hence, where there has been no actual notice, the possession must have been so notorious as to warrant the inference that the owner ought to have known that a stranger was asserting dominion over his land. Insidious, desultory, and fugitive acts will not serve that purpose. To have that effect the possession should be clear and satisfactory, not doubtful and equivocal.' "

(quoting *Philbin v. Carr* (1920), 75 Ind. App. 560, 584–85, 129 N.E. 19, 27–28). In *McCarty*, the supreme court ruled that yard maintenance activities in a residential area such as mowing grass and weeding are sporadic and periodic acts of ownership and insufficient to constitute adverse possession. In the same case, however, the court held that, where a garage built by one of the parties intruded approximately two feet on the land of the other and had been in existence longer than the statutory period, adverse possession was established. Thus, the ultimate finding in that case was that the trial court erred "in awarding them [the defendants] more land than that actually occupied by their garage." 423 N.E.2d at 301. On the other hand, our court has held that erecting improvements on a disputed portion of the land is sufficiently conspicuous for purposes of adverse possession. *See Penn Central Transportation Co. v. Martin* (1976), 170 Ind.App. 519, 353 N.E.2d 474 (erecting a garage and addition to house along with mowing grass held sufficient); *Smith v. Brown* (1956), 126 Ind.App. 545, 134 N.E.2d 823 (erecting concrete curbing, driveway, and hedge fence along with yard maintenance held sufficient).

■ The record reveals the Joneses presented the following evidence of their activities in the disputed seven foot strip. When they moved into their house, they plowed, graded, and planted grass up to the miscalculated border. The Joneses periodically mowed and fertilized the area, although the record contains no indication as to how many years they fertilized the strip. Somewhere in the disputed strip they planted a small fruit tree about four years before trial. Their water meter was located in the disputed area. A wooden fence was erected along the mistaken prop-

---

2. IND.CODE 32–1–20–1 also requires that all taxes and special assessments which fall due on land adversely possessed be paid by the possessor. The purpose of this statute, enacted originally in 1927, was to give notice to the owners of unoccupied lands that their property was being adversely claimed by another. In residential neighborhoods, the tax duplicate does not serve notice to the record titleholder that the land described on the tax statement is being adversely claimed by another. In such circumstances, the actions of the claimant by possessing the land in full view of the titleholder gives notice of his claim. *Echterling v. Kalvaitis* (1955), 235 Ind. 141, 126 N.E.2d 573; *see also Ford v. Eckhert, supra.*

erty line, but it only stood for seven years at most.[3]

In applying these facts to the standard enunciated for notorious possession, we must conclude no activity or conduct by the Joneses was sufficiently conspicuous to give persons who frequently pass the premises the ability to see occupancy, other than the periodic and sporadic yard maintenance which was held insufficient by our supreme court in *McCarty, supra.*[4] In other words, except for the fence which was in existence short of the period required by the statute, there was no evidence or inferences from evidence as to the actual, visible, exclusive possession of the Joneses. The Greenes' record title to the disputed property is not defeated, and the trial court's judgment must be reversed.

Judgment reversed.

YOUNG, P.J., dissents with separate opinion.

CONOVER, J., concurs.

YOUNG, Presiding Judge, dissenting.

I would affirm the trial court's determination that the Joneses acquired title to the disputed strip adjoining Lot No. 2 by adverse possession. Improving the disputed area by grading and planting grass and trees constitutes sufficient acts of ownership to establish adverse possession of a residential property when the owner of record title has actual notice of the possessor's claim. The majority's view that the entire neighborhood must be able to recognize the property line between two neighbors' residences would limit adverse possession to situations where the act of possession is evidenced by a visible marker such as a fence, garage, or driveway. Moreover, even erecting such improvements would be insufficient evidence of possession unless it was also clear the improvement was intended to mark a boundary line.

The sole purpose of requiring possession to be notorious is to put the record owner on notice of the adverse claim. *Houston v. United States Gypsum Co.*, 652 F.2d 467, 475 (5th Cir.1981); *see also Poole v. Corwin* (1983), Ind.App., 447 N.E.2d 1150. As explained by our supreme court in *Marengo Cave v. Ross* (1937), 212 Ind. 624, 627, 10 N.E.2d 917, 920–21:

> The possession must be open and notorious. The mere possession of the land is not enough. It is knowledge, either actual or imputed, of the possession of his lands by another, claiming to own them bona fide and openly, that affects the legal owner thereof. Where there has been no actual notice, it is necessary to show that the possession of the disseisor was so open, notorious, and visible as to warrant the inference that the owner must or should have known of it.

Indiana decisions, however, have never explicitly held that possession must be notorious when the owner has actual notice of the adverse claim. Such a rule is, however, implicit in adverse possession cases from the manner in which the term "notorious" is defined. In *Philbin v. Carr* (1920), 75 Ind.App. 560, 585, 129 N.E. 19, 28, quoted

---

**3.** The record does not demonstrate exactly how long the fence was in place. The testimony indicated the fence was erected by a former owner of the Greene residence who initially inhabited the house in 1972. Assuming the fence was erected at the outset of the former owner's tenure, the longest it could have been in place was from 1972 to 1979, seven years.

**4.** The water meter was apparently placed in the disputed area by the utility, not the Joneses.

Therefore it could not be interpreted as a manifestation of the Joneses' control over the property. We know of no authority, nor is any cited, for the proposition that the placement of equipment by a utility company, *e.g.*, meters, telephone poles, located within or without their utility easements, is evidence that a party has established his boundary line at the point of the installation.

by the majority opinion, the court defines "notorious" as follows:

> [w]here there has been no actual notice, the possession must have been so notorious as to warrant the inference that the owner ought to have known that a stranger was asserting dominion over his land.

(emphasis added); see also 1 I.L.E. Adverse Possession § 13 (1957). The majority of jurisdictions has consistently held that openness and notoriety are unnecessary if the owner has actual knowledge of the adverse claim. See 2 C.J.S. Adverse Possession § 50–51 (1972) and cases cited therein.

Here, it was undisputed that the Greenes and their predecessors in title knew the Joneses claimed property to the line where the fence had once been located. The Joneses treated that property as their own for the required statutory period. I would therefore affirm the trial court's determination that the Joneses had acquired title to the strip adjoining Lot No. 2 by adverse possession.