**William M. BEAVER and Darlene B. Beaver, Appellants,**

v.

**John D. VANDALL and Elaine Vandall, Appellees.**

No. 66S03–8912–CV–896.

Supreme Court of Indiana.

Dec. 7, 1989.

Bruce A. Dumas, Valparaiso, for appellants.

Mark E. Wagner, Kizer & Neu, Bremen, for appellees.

PIVARNIK, Justice.

This cause comes to us on a petition to transfer from the Third District Court of Appeals. This cause arose in the trial court in 1985 when William M. and Darlene B. Beaver brought action to quiet title to the disputed property and John D. and Elaine Vandall counterclaimed, alleging the property was theirs by adverse possession. The trial court found the Vandalls had proved right to title by adverse possession of the disputed property and the Beavers appealed that decision to the Court of Appeals. The Court of Appeals affirmed the trial court on all issues and this petition to transfer is brought by the Beavers.[1]

The issues decided by the Court of Appeals concern the finding by the trial court that Beaver was in contempt for action he took on the property during the trial and sufficiency of the evidence in establishing adverse possession by the Vandalls. The only issue raised in the Beavers' petition to transfer concerns the finding of adverse possession.

We find the issue concerning adverse possession demonstrated by Issue III in the Court of Appeals opinion presents insufficient evidence to establish adverse possession in the Vandalls. Accordingly, we vacate the opinion of the Court of Appeals, 532 N.E.2d 627, and reverse the judgment of the trial court on this issue.

The facts show that on January 23, 1973, the Beavers purchased a five (5) acre parcel of land in Starke County, Indiana. The five acres included the parcel ultimately sold to the Vandalls. On February 28,

---

1. See also *Estate of Mark v. H.H. Smith & Jeffrey Mark,* Ind., 547 N.E.2d 796, handed down this date.

1974, the Beavers sold to the Vandalls a lot and house. The lot sold to the Vandalls measured one-hundred twenty-three feet by three-hundred thirty feet (123' × 330') and these dimensions are contained within the body of the deed. The conflict here involves an eighteen foot (18') strip on the northern boundary of the property which is not within the one-hundred twenty-three foot by three-hundred thirty foot dimension. This eighteen foot strip is contiguous to, and north of, the northern boundary of the lot conveyed. After the transaction was completed and the Vandalls were living on the property, the Vandalls requested Beaver to clear the northern border of the property and Beaver agreed to do it. Beaver removed trees and brush, not only from the northern part of the Vandalls' lot, but on into his own property for a distance of eighteen feet. He testified he cleared trees approximately four to six feet across the northern border so that the property line would be clear to both parties. The Vandalls claim that by clearing this additional property he indicated an intent for them to have and use as their own the entire area cleared. After this was done, John Vandall testified he leveled and seeded the area along the northern boundary but did not enlarge upon the area already cleared by Beaver. A propane gas tank was located on the property when Vandall purchased it from Beaver in 1974. The tank had been used by Beaver during construction of the house. Vandall replaced the original tank with a larger tank and built a fence around the tank. He used this larger tank for approximately one year. After that, Northern Indiana Public Service Company provided natural gas service to his home, so the tank was removed. During the summer of 1977, Vandall erected a utility building on the property on the site previously occupied by the original propane gas tank. The utility building was not considered by any of the parties to be a permanent improvement on the land. It was a small utility shed that sat on the ground. At one time, the Vandalls had a fence on their property which encroached on the eighteen foot area but did not reach or form a northern boundary, either at the lot line or

the northernmost boundary of the eighteen foot strip. The utility building and propane tanks, when they existed on the property, were on the eighteen foot strip but were not on the northern boundary of it.

The Vandalls' claim of possession of the entire eighteen foot strip is based on their testimony that they maintained grass, including seeding, mowing and fertilizing, on the eighteen foot strip to its most northern boundary and that they never encroached further in their possession. The Beavers testified they did not become aware the Vandalls were encroaching on their property until a period between 1979 and 1981 when they noticed the Vandalls were encroaching further and further into their property. The Vandalls called as witnesses Richard and Annamae Anderson to testify on their behalf. The Andersons live across the road and west of the Vandall property. Richard Anderson testified he assisted Vandall in leveling and seeding his property. He conceded he did not observe any mowing along the northern property line. Annamae Anderson conceded she did not know if that part of the northern boundary area being mowed conformed to the legal boundaries of the Vandall property. They both testified the dimensions of the Vandall property did not appear to change over the years. When the Beavers became aware of the encroachment they observed beginning in 1979, they hired surveyor Janovic to survey the property. Janovic and his assistant Frankowski surveyed the property and located the boundaries of the original one-hundred twenty-three feet by three-hundred thirty feet (123' × 330') borders, establishing that the eighteen foot strip was north of and outside the description of the lot. Janovic placed stakes evidencing the border of the two pieces of property. In 1984 and 1985, Janovic had occasion to be on the property again and noticed the stakes had been removed. In 1985, the Beavers brought this action.

In dissenting to the majority opinion, Judge Hoffman found plowing, grading, seeding, mowing, fertilizing, planting a small tree and placing a water meter on said property are not enough to establish

adverse possession. He further found no fence was ever built or maintained on the disputed property, no permanent structures were erected on said land, no temporary structure existed on said land for the required ten years, and he concluded the Vandalls failed to prove adverse possession, citing *McCarty v. Sheets* (1981), Ind., 423 N.E.2d 297, and *Greene v. Jones* (1986), Ind.App., 490 N.E.2d 776. We agree with Judge Hoffman in his dissent and find it to be dispositive.

In *McCarty*, Defendant Sheets claimed title by reason of adverse possession of not only property of McCarty encroached by Sheets' garage, but also to a strip four feet two inches wide by one hundred fifty feet long (4'2" × 150') that he claimed he maintained by mowing, weeding and fertilizing. He claimed it was the intention to establish the boundary line of the properties at a point midway between the plaintiff's and defendant's garages even though this was not the actual boundary line of the properties. Writing for a unanimous court, Justice Prentice held that the only "palpable and continuing" act of ownership went to the land actually encroached upon by defendant's garage.

> Furthermore, [w]here the quantity of land involved is small, the rule as to the location of the line is exacting; possession to the line during all the [statutory] period must be definitely shown.

423 N.E.2d at 300 (citing *Baxter v. Girard Trust Co.* (1927), 288 Pa. 256, 260, 135 A. 620, 621). The court further held that while maintenance activities in a residential area are a factor in a property dispute, they are not sufficient, standing alone, to support divestiture of property based on adverse possession. *Id.* at 300–01. In *Greene*, the Court of Appeals found that casual maintenance of ground, involving seeding, fertilizing, mowing, and weeding, does not constitute evidence of dominion over land that establishes adverse possession. 490 N.E.2d at 779. The fact that the Vandalls' land was residential and the remaining land of the Beavers was not, because it was still wooded, is not material to the question here. The Vandalls are claiming to a particular line and make their claim of adverse possession and use to a given line that is cleared.

To establish adverse possession of land one must establish the open, continuous, exclusive, adverse and notorious possession of property under a claim of right for the statutory period. *McCarty*, 423 N.E.2d at 300. In *Lake Erie and W.R.R. Co. v. Wynn* (1920), 73 Ind.App. 266, 127 N.E. 163, the Court of Appeals stated:

> In order to establish title by adverse possession, there are five indispensable elements, namely: (1) such possession must be hostile and under claim of right; (2) it must be actual; (3) it must be open and notorious; (4) it must be exclusive; and (5) it must be continuous.

*Id.* at 267, 127 N.E. at 163.

Record title is the highest evidence of ownership and is not easily defeated. It can be defeated by adverse possession but mere possession is the lowest form of ownership. *McCarty*, 423 N.E.2d at 300; *Philbin v. Carr* (1920), 75 Ind.App. 560, 582, 129 N.E. 19, 27. In *Philbin*, the court stated: "Hence, where there has been no actual notice, the possession must have been so notorious as to warrant the inference that the owner ought to have known that a stranger was asserting dominion over his land." 75 Ind.App. at 584–85, 129 N.E. at 28.

There was insufficient evidence here to establish such dominion and, hence, such notice over the eighteen foot strip. The only evidence of activity of the Vandalls up to the northern border of the eighteen foot strip was the casual maintenance such as planting, seeding, and mowing. No permanent structures, including border fences or buildings, were put on any part of the land in question. There is no evidence as to when the fence encroaching on the land was put up which would establish that it had been there for the total statutory period of ten years, and the fence did not traverse the piece to the northern border at any rate. None of the temporary structures such as the propane tanks and the utility shed were there for the total statutory period. These acts upon the disputed

strip by the Vandalls did not give notice to the Beavers that any activity or possession by the Vandalls was adverse in that it would meet the test outlined above. The testimony of the Andersons, neighbors of the Vandalls, did not support such a finding. The Beavers testified they did not become alerted to the intentions of the Vandalls until 1979 when it appeared to them the activities of the Vandalls appeared to demonstrate they, the Vandalls, were increasing their encroachment beyond their property line and onto the Beavers' land. It was at this point that the Beavers had the survey made in 1981 which culminated in this cause of action being filed in 1985. Assuming, *arguendo*, that the Beavers' recognition in 1979, that an adverse claim was being made on their property, would start the statutory period, it of course, was not the sufficient length of ten years.

This cause is remanded to the trial court with directions to enter judgment for Petitioner–Defendants William M. and Darlene B. Beaver.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.