**Jack W. THOMPSON and Kathryn P. Thompson and Harold Gardner, Appellants,**

v.

**LEEPER LIVING TRUST and Syntha Saylor, Appellees.**

No. 50A04–9801–CV–20.

Court of Appeals of Indiana.

Aug. 28, 1998.

Eugene N. Chipman, Sr., Plymouth, for Appellants.

Jere L. Humphrey, Kizer & Neu, Plymouth, Peter L. Rockaway, Rockaway & Morris, Plymouth, for Appellees.

## OPINION

MATTINGLY, Judge.

Jack W. Thompson, Kathryn P. Thompson (the Thompsons), and Harold Gardner (Gardner) appeal a trial court judgment that rejected a legal survey and denied their adverse possession claim. We state the issues on appeal as follows:

    I. Whether the trial court's rejection of a legal survey was error.

    II. Whether the trial court's denial of the Thompsons' and Gardner's adverse possession claim was error.

We affirm.

### FACTS AND PROCEDURAL HISTORY

The Thompsons' property is bordered on the east by Gardner's property and on the west by a tract owned by Syntha Salyer (Salyer). The southern border of each of these tracts adjoins a tract of land owned by the Leeper Living Trust (Leeper).

In the fall of 1996, the Thompsons and Gardner requested a legal survey of the parties' tracts. The survey was conducted by Bradley Cramer, a licensed surveyor. Among the conclusions which may be drawn from Cramer's survey are that (1) the boundary line between the respective tracts of Salyer and the Thompsons is farther west than was indicated by a previous survey, and (2) the boundary line between Leeper's tract, on one side, and the Thompsons' and Gardner's respective tracts, on the other, is not as far south as the Thompsons and Gardner had believed.

Pursuant to Indiana Code Section 36–2–12–14, Salyer, Jack Thompson,[1] and Gardner appealed Cramer's survey to the trial court. The grounds of Salyer's appeal appear to have been that Cramer's survey was improperly conducted and was inconsistent with prior surveys. Jack Thompson and Gardner

---

1. It appears from the pleadings that Jack Thompson appealed Cramer's survey but that Kathryn Thompson did not. Both Kathryn and Jack Thompson, however, have appealed the trial court's judgment that gives rise to the issues before us.

appear to have appealed Cramer's survey on an adverse possession theory; according to them, the boundary line between their tracts and Leeper's tract should have been located farther south than Cramer's survey indicated because they had acquired, by adverse possession, a 10-to-12-foot-wide strip of land between their tracts and Leeper's tract. After a hearing at which the parties presented evidence and witnesses, the trial court, issuing findings of fact and conclusions of law, rejected Cramer's survey and denied the adverse possession claim advanced by Jack Thompson and Gardner. Additional facts will be provided below.

## STANDARD OF REVIEW

■■■ At Leeper's request, the trial court made findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A). Our standard of review is therefore two-tiered. We first determine whether the evidence supports the findings, and then we determine whether those findings support the judgment. *Culley v. McFadden Lake Corp.*, 674 N.E.2d 208, 211 (Ind.Ct.App.1996). The trial court's findings and judgment will not be set aside unless they are clearly erroneous. *Id.* Findings of fact are clearly erroneous when they are unsupported by facts of record or by reasonable inferences. *DeHaan v. DeHaan*, 572 N.E.2d 1315, 1320 (Ind.Ct.App. 1991). In determining whether the findings and judgment are clearly erroneous, we neither reweigh the evidence nor judge the credibility of witnesses, and we consider only the evidence and reasonable inferences that support the judgment. *Id.* We may affirm the judgment on any legal theory supported by the findings. *Mitchell v. Mitchell*, 695 N.E.2d 920, 923 (Ind.1998).[2]

2. Although we may affirm the judgment on any legal theory supported by the findings, our supreme court has noted that "[w]hether it is prudent to do so may turn on the extent to which the issue is briefed on appeal." *Mitchell*, 695 N.E.2d at 923. Our supreme court has further noted that "before affirming on a legal theory supported by the findings but not espoused by the trial court, the appellate court should be confident that its affirmance is consistent with all of the trial court's findings of fact and the inferences reasonably drawn from the findings." *Id.* at 924.

## DISCUSSION

### I. Rejection of Legal Survey

■■■ The Thompsons and Gardner appear to claim that Cramer's legal survey was correct to the extent that it determined the boundary line between the respective tracts of Salyer and the Thompsons to be farther west than a previous survey indicated. They therefore assign error to the portion of trial court's judgment that rejected Cramer's legal survey.

The trial court noted that the legal description is presumed correct and that compelling visual evidence at variance with the legal description must exist to support a legal survey which varies from a proper legal description. The court then concluded:

> The Cramer legal survey, in an effort to explain some inconsistency in the lines of occupation, such as the visual evidence and assumptions arising therefrom, uses portions of this conflicting record and thereby ignores the language of the deeds which fixes by courses and distances the property lines. Where such an amount of conflict in the visual record exists and the history of usage is consistent with the language of the deeds, the statement of distances in the deeds prevails.

R. at 21.

■■■ We find no error. The question of the correctness of a survey is one of fact. *Chitwood v. Garner*, 65 Ind.App. 290, 293, 117 N.E. 211, 212 (1917). Here, evidence relating to the correctness of Cramer's survey was in conflict. There was certainly evidence tending to support the accuracy of Cramer's survey.[3] However, there was also evidence tending to suggest that the results of Cramer's survey were inaccurate.[4] The

3. See, for example, the certificate of legal survey filed by Cramer, R. at 27, and Cramer's testimony, R. at 120–31.

4. For example, Cramer's survey produced results different from those that might have been produced had Cramer chosen to credit particular physical evidence which existed between the respective tracts of Salyer and the Thompsons. *See* R. at 66–67.

trial court was entitled to credit evidence of the survey's inaccuracy and to discount evidence to the contrary. We will not reweigh this evidence. The trial court's rejection of Cramer's survey was not error.

## II. Denial of Adverse Possession Claim

The adverse possession claim advanced by the Thompsons and Gardner arises from the following facts. For well over 10 years prior to the appeal of Cramer's survey, a woven wire fence ran across the northern part of Leeper's tract, apparently extending the full east/west length of the Thompsons' and Gardner's respective tracts. In 1995, Leeper removed the woven wire fence and, approximately 10-to-12 feet north of it, installed a barbed-wire fence. Gardner, on his tract, operates a facility for storing and drying grain. On the southern portion of his tract stand grain bins. Before the barbed-wire fence was installed, trucks hauling grain could drive around the southern edge of Gardner's grain bins, arrogating a portion of the 10-to-12-foot strip for their drivepaths. The installation of the barbed-wire fence cut off access to that strip, leaving no room for grain-hauling trucks to drive around the southern edge of the grain bins.

The Thompsons and Gardner argue that they acquired title to the 10-to-12-foot-wide strip of land lying between the new barbed-wire fence and the now-removed woven wire fence by adverse possession. They contend that the trial court committed error by denying their adverse possession claim. We disagree.

■ To establish a claim of adverse possession, the claimant must demonstrate "actual, visible, notorious, and exclusive possession of the real estate, under a claim of ownership hostile to the true owner for a continuous ten-year period." *Rieddle v. Buckner*, 629 N.E.2d 860, 862 (Ind.Ct.App. 1994). Adverse possession cases are fact-sensitive and must be decided on an individual basis. *Williams v. Rogier*, 611 N.E.2d 189, 195 (Ind.Ct.App.1993).

Gardner's claim to adverse possession of the disputed strip appears to rest on the following grounds: (1) the location of the woven wire fence, (2) his belief that his tract extended south to the woven wire fence and thus included the disputed strip, (3) that trucks used part of the disputed strip as a driveway, and (4) that he stored obsolete farm machinery on the disputed strip.

■ A claim of adverse possession is not supported by the first two grounds that Gardner asserts. Neither the fact that the woven wire fence stood where it did, nor the fact that Gardner believed his property extended to the fence, can decisively show that he actually, visibly, notoriously, or exclusively possessed the disputed strip.

■ Nor do the third and fourth grounds asserted support Gardner's adverse possession claim. We note that periodic or sporadic acts of ownership are not sufficient to constitute adverse possession. *McCarty v. Sheets*, 423 N.E.2d 297, 301 (Ind.1981). The trucks' use of the disputed strip as a driveway may, at best, be characterized as periodic or sporadic activity. Nor can we say that the storage of obsolete farm machinery on the disputed strip amounts to more than a periodic or sporadic act of ownership. *See Ferguson v. Prince*, 136 Tenn. 543, 190 S.W. 548, 549 (1916) ("The defendant also insists that he had been in adverse possession of this lot.... But the evidence fails to sustain this defense; his supposed possession consisting simply of having dirt thrown upon the lot from time to time to fill up holes, and also of occasionally storing lumber and wagons thereon. Such intermittent acts are not sufficient.").

Gardner cites *Smith v. Brown*, 126 Ind. App. 545, 134 N.E.2d 823 (1956), and *Kline v. Kramer*, 179 Ind.App. 592, 386 N.E.2d 982 (1979), to support his adverse possession claim.[5] In *Smith*, adverse possession of a disputed strip of land was established where the evidence showed, among other things, that the adverse possessor "trimmed the shrubbery, mowed the grass, and planted flowers on the land in dispute," that he "used

---

**5.** Gardner also cites *McCarty v. Sheets*, 391 N.E.2d 834 (1979), but the decision and opinion in that case were vacated by our supreme court in *McCarty v. Sheets*, 423 N.E.2d 297 (Ind.1981).

the entrance and driveway which crossed the land in dispute and put black top and crushed stone on it[,]" and that his wife "chased people off the property[.]" 126 Ind. App. at 554–55, 134 N.E.2d at 827. Gardner has not shown evidence of activity with respect to the disputed strip such as that which established adverse possession in *Smith.* In *Kline,* we sustained a lower court's finding that possession held by predecessors-in-interest of adverse possessors was both hostile and under a claim of ownership. 179 Ind. App. at 599, 386 N.E.2d at 988. Even if Gardner could demonstrate that his possession of the disputed strip was hostile and under a claim of ownership, he has nevertheless failed to show his actual, visible, notorious, or exclusive possession of the disputed strip. As a result, he fails to establish his adverse possession claim.

The Thompsons' adverse possession claim appears to rest on the following grounds: (1) the location of the woven wire fence and (2) their belief that their tract extended south to the woven wire fence and thus included the disputed strip. Because we have held above that adverse possession may not be established on these grounds, we do not address the Thompsons' claim further.

The judgment is affirmed.

NAJAM and FRIEDLANDER, JJ., concur.