FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**ERIC C. McNAMAR**
**B. TOO KELLER**
Keller Macaluso LLC
Carmel, Indiana

ATTORNEY FOR APPELLEES:

**KEVIN C. TANKERSLEY**
Winamac, Indiana

**FILED**

Aug 30 2012, 9:18 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| LANE ALAN SCHRADER TRUST as Trustee under the Trust Agreement dated 16th day of November, 1999, and known as LANE ALAN SCHRADER SELF-DECLARATION OF TRUST, | ) ) ) ) ) ) |
| Appellant-Petitioner, | ) ) |
| vs. | ) ) No. 75A04-1112-PL-676 |
| LARRY GILBERT and NANCY J. MALECKI, | ) ) ) ) |
| Appellees-Respondents. | ) |

APPEAL FROM THE STARKE CIRCUIT COURT
The Honorable Patrick B. Blankenship, Special Judge
Cause No. 75C01-0905-PL-17

**August 30, 2012**

**OPINION – FOR PUBLICATION**

**BAKER, Judge**

In this case, we are presented with a property boundary dispute and how trial courts may settle them through the use of land surveys. Here, a landowner purchased property based on information from a neighbor that a barn on the property had a twenty-foot setback. The landowner required this setback to conduct his business; however, at least two surveys indicated that the setback was less than the required twenty feet. The landowner decided to have a legal survey performed on the property, which indicated that there was a twenty-foot setback. This legal survey was recorded in the county recorder's office.

The landowner's neighbors appealed the legal survey to the trial court, arguing that it should be stricken from the recorder's office. After a bench trial, the trial court determined that the legal survey was defective for failure to use good surveying practices and imposed two previous surveys. We conclude that this was error. The applicable statutory provisions require that strict notice provisions be followed, and there was no evidence that notice was given before the two previous surveys were conducted. Moreover, we think that the proper interpretation of the statute is that the trial court may either accept the survey that is being appealed, order a new survey, or order the county surveyor to locate and mark the boundary lines according to the trial court's findings as supported by the evidence.

Appellant-defendant Lane Alan Schrader as Trustee of the Lane Alan Schrader Trust (the Trust) appeals the trial court's findings of fact and conclusions of law in its

2

order striking a legal survey and imposing two previous retracement surveys. More particularly, the Trust argues that the trial court's findings of fact and conclusions of law are clearly erroneous, inasmuch as they are not supported by facts in the record. Specifically, the Trust asserts that there is no evidence in the record that the legal survey was conducted in derogation of good surveying practices.

Additionally, the Trust maintains that the trial court's order must be vacated because the applicable statute requires that the trial court either affirm the legal survey or set aside the survey and order a new one.

Finally, the Trust contends that a second applicable statute imposes strict notice requirements to establish property lines pursuant to a legal survey. And because appellees-plaintiffs Larry Gilbert and Nancy J. Malecki (collectively, "the Appellees") failed to present evidence that proper notice was given before the previous retracement surveys were conducted, no legal survey was created, and the trial court erred by imposing those two surveys.

Determining that the trial court did not err by concluding that the legal survey was not conducted through the use of good surveying practices, but finding that the trial court erred by imposing two previous surveys, we reverse and remand to the trial court with instructions that the trial court enter a new order consistent with this opinion.

FACTS

On February 28, 2004, Lane Schrader purchased a parcel of property in Starke County described as:

3

THE EAST HALF OF THE FOLLOWING TRACT, TO WIT: COMMENCING AT A POINT ON THE SECTION LINE 660 FEET WEST OF THE SOUTHEAST CORNER OF THE SOUTHEAST 1/4 OF SECTION 29, TOWNSHIP 32 NORTH, RANGE 4 WEST OF THE SECOND PRINCIPAL MERIDIAN, STARKE COUNTY, INDIANA. THENCE WEST ON THE SECTION LINE 660 FEET, MORE OR LESS, TO THE SOUTHWEST CORNER OF THE SOUTHEAST 1/4 OF THE SOUTHEAST 1/4 OF SAID SECTION 29; THENCE NORTH 660 FEET, MORE OR LESS, TO THE NORTH LINE OF THE SOUTH HALF OF THE SOUTHEAST 1/4 OF THE SOUTHEAST 1/4 OF SAID SECTION 29; THENCE EAST 660 FEET, MORE OR LESS, TO A POINT 660 FEET WEST OF THE EAST LINE OF SAID SECTION 29, THENCE SOUTH 660 FEET, MORE OR LESS, TO THE PLACE OF BEGINNING.

Ex. E. (Warranty Deed in Trust). Approximately three months later, Schrader conveyed the parcel to the Trust.

The Trust property's southeast border was adjacent to Gilbert's property and the Trust property's north border was adjacent to Malecki's property. The Gilbert property had "senior rights" in the quarter section, which means that the parcel has been cut from a parent tract and prevails over other property descriptions. Tr. p. 328. Gilbert's parcel was described as:

A tract of land commencing at the Southeast Corner of Section[ ]29, range 4 West of the 2nd P.M., Starke County, Indiana; thence West 660 feet on The section line; thence North 330 feet; thence East 660 feet to the Section line; thence south 330 feet to the place of beginning.

Appellant's App. p. 10

Before purchasing the property, Steven Schrader, the son of Lane Schrader, visited the property, and a neighbor showed him monument pins that marked the property lines. Lane purchased the property based, in part, on the neighbor's representations. Relying on

the monument points, the Schraders believed that they would have a twenty-foot setback on the side of a barn on the property, which was needed to run a business from the back of the property.

Within one month of purchasing the property, the Trust hired Turning Point Surveying, Inc. (Turning Point) to survey the property. Turning Point surveyed the property and recorded its survey with the Starke County Recorder's Office on June 16, 2004, but there was no evidence introduced at trial that Turning Point notified neighboring landowners that the company conducted or recorded the survey. The Turning Point Survey indicated that the setback was less than twenty feet.

Approximately one year later, the Trust hired Progressive Engineering, Inc. (Progressive) to conduct a retracement survey to verify the survey conducted by Turning Point. The Progressive Survey was consistent with the survey completed by Turning Point. Although Progressive completed the retracement survey in December 2005 and provided the Trust with a copy at that time, Progessive did not record the survey until April 21, 2009. And like the Turning Point survey, there was no evidence introduced at trial indicating that Progressive notified neighboring landowners that it had conducted or recorded the survey.

Before Progressive recorded its survey in April 2009, Torrenga Surveying, LLC (Torrenga) was hired to create a legal survey[1] and set out the lines of occupation on and

---

[1] A legal survey is typically performed to establish boundary lines between landowners that are in dispute. See Ind. Code § 36-2-12-10. By contrast, a retracement survey is a survey of real property that has been

5

adjacent to the Trust property. To create a legal survey, Torrenga gathered record descriptions of both the land to be surveyed and the adjoining properties along with copies of prior surveys, maps, documents and field notes relating to the Trust's deeded property. More particularly, Stuart Allen of Torrenga obtained from the Starke County Recorder's Office a 1993 survey of the Gilbert property conducted by Joe Smrt and the Territorial Engineering Survey. Additionally, Allen obtained an opinion letter from Territorial Engineering setting the corner of the southeast quarter; a letter written by Smrt to a property owner west of the Trust property in which Smrt commented that a fence on that property was on or near a boundary line; a survey conducted by former Starke County Surveyor Van Janovic of a parcel just north of the north boundary of the quarter section that contained the Trust property; and other documents. Torrenga, however, was not given a copy of the Progressive Survey by the Trust.

After gathering these documents, Allen and other members of Torrenga's surveying crew, visited the Trust property and located as many monuments and fence lines as they could find. The crew found an iron pipe monument in the northwest corner of the property and another iron pipe monument adjacent to a fence corner in the northeast corner of the property – a fence Progressive had called a line of occupation.[2] The crew also found two more pipe monuments on the east side of the property.

The Torrenga survey crew then searched beyond the borders of the Trust property and found additional fence lines on parcels to the west running in a similar direction as

_____

[2] Bradley Cramer of Progressive Engineering admitted at trial that the lines of occupation deviated from the section lines. Tr. p. 194.

6

the fence on the east side of the property. Torrenga also considered monument points in a survey conducted by Janovic of a parcel north of the Malecki property, which was just north of the quarter section containing the Trust property. The points identified by Janovic in his retracement survey were set by surveyor Donald Mason, but it is not known whether Mason created a survey of the parcel. Janovic, however, was not surprised by the reasonable agreement between the so-called "Mason points" and the fences west of the Trust property.

Ultimately, Allen created the "Torrenga Survey" along with a "Theoretical Breakdown" of the quarter section containing the Trust Property and other parcels. Ex. 3; Ex. 1 (Theoretical Breakdown). The Torrenga Survey, the legal survey at issue, set out lines of occupation for the Trust property and surrounding parcels. The Theoretical Breakdown survey was a representation of what the quarter section would look like if certain monument points were used. The Theoretical Breakdown survey was not recorded.

Torrenga recorded the Torrenga Survey with the Starke County Recorder on or about January 22, 2009. Approximately four months later, on May 19, 2009, the Appellees filed an appeal challenging the proposed legal survey, naming the Trust; Dennis Estok, the Starke County Surveyor; Jackie Bridegroom, the Starke County Recorder; Torrenga, and Allen as opposing parties. On July 9, 2009, Allen, Torrenga, and the Trust filed a motion to dismiss, asserting that Allen and Torrenga were not proper parties to the lawsuit and that Malecki had forfeited her right to challenge the accuracy of

7

the legal survey when she had defaulted in her prior, related lawsuit, <u>Lane Alan Schrader, Self Declaration of Trust, by Lane Alan Schrader, Trustee v. Alfred Malecki and Nancy Malecki, Husband and Wife et al.</u>, 75C01-0507-PL-050. On January 28, 2010, the trial court held a hearing on the motion and took the motion under advisement; however, it failed to issue a ruling on the motion.

A bench trial was conducted on the appeal of the Torrenga Survey from November 16-18, 2010, and the trial court took the matter under advisement. On December 21, 2010, counsel for the Appellees submitted additional authority to the trial court in support of their assertion that the legal survey should be stricken from the record in the Starke County Surveyor's Office. On January 3, 2011, counsel for the Trust responded to the submission.

On November 10, 2011, the trial court entered findings of fact and conclusions of law in its order finding the Torrenga Survey defective. More particularly, the trial court determined that "while the Court recognizes that it may order a new survey be made by a competent person, the [Court] declines to do so for the reason that the evidence is overwhelming that the [Trust] already has in its possession two (2) surveys prepared by competent persons which clearly show the boundary lines for the Trust property." Appellant's App. p. 16. The Trust now appeals.

<u>DISCUSSION AND DECISION</u>

<u>I. Clearly Erroneous Findings</u>

8

The Trust contends that out of the trial court's thirty-four findings of fact, fourteen are material and clearly erroneous. As stated above, the trial court entered findings of fact and conclusions of law. Accordingly, we must conduct a two-tiered standard of review. Thompson v. Leeper Living Trust, 698 N.E.2d 395, 397 (Ind. Ct. App. 1998). First, we determine whether the evidence supports the findings, and then we determine whether the findings support the judgment. Id. This Court will not set aside the trial court's findings unless they are clearly erroneous; in other words, they are unsupported by facts in the record or reasonable inferences drawn from the facts. Id.

When determining whether findings are clearly erroneous, we neither reweigh the evidence nor judge the credibility of witnesses and consider only the evidence supporting the judgment. Id. We may affirm the judgment on any legal theory supported by the findings. Id.

At the outset, we note that in response to the Trust's arguments, the Appellees rely on broad statements with general citations to over 200 pages of transcript. The Indiana Rules of Appellate Procedure require that a party provide a cogent argument with adequate citation. See Ind. Appellate Rule 46(B) (providing that the Appellee's Brief shall form to Appellate rule 46(A)); Ind. Appellate Rule 46(A)(8) (requiring that "[e]ach contention [] be supported by citations to the authorities, statutes and the Appendix or parts of the Record"). This allows the appellant to appropriately respond and prevents the court from becoming an advocate when it is forced to search the entire record for evidence in support of the appellee's broad statements. Keller v. State, 549 N.E.2d 372,

9

373 (Ind. 1990). We note that this is also inefficient and caution against this practice in the future.

Proceeding to the merits, Thompson is instructive on this issue. In Thompson, the Leeper Living Trust property bordered Jack Thompson's, Harold Gardner's, and Syntha Salyer's property on the south. 698 N.E.2d at 396. Thompson and Gardner requested that a legal survey be performed by Bradley Cramer, whose results were different from the previous survey. Id.

All parties, except the Trust appealed, arguing that it was improperly conducted and inconsistent with prior surveys. Id. The trial court held a hearing and issued findings of fact and conclusions of law, rejecting Cramer's survey. Id. at 397. The trial court reasoned that "the legal description is presumed correct and that compelling visual evidence at variance with the legal description must exist to support a legal survey which varies from the proper legal description." Id.

A panel of this Court opined that the "question of the correctness of a survey is one of fact." Id. The panel noted that the evidence regarding the correctness of Cramer's survey was in conflict and that the "trial court was entitled to credit evidence of the survey's inaccuracy and to discount evidence to the contrary." Id. at 397-98. Accordingly, the panel found no error. Id. at 397.

Likewise, in the instant case, Steve Schrader testified that state law required that a commercial building have a twenty-foot setback from any property line. Tr. p. 440-41. Schrader stated that according to the Turning Point Survey, Progressive Survey, and the

Smrt Survey, the barn did not have the required twenty-foot setback from the property line. Id. at 441. Therefore, Torrenga was hired to perform a legal survey.

Surveyor Janovic testified that in his "opinion, [Allen from Torrenga] did not use . . . controlling monuments." Tr. p. 292. He also testified that some of the points located by surveyor Don Mason, who is deceased and whose survey was not admitted into evidence, were "a huge blunder." Id. at 249. This was significant because Allen had relied upon some of these points in preparing the Torrenga Survey.

Perhaps most compelling, Allen testified that he never searched any of the records of prior ownership of the real estate or obtain information regarding senior rights. Tr. p. 598-99. Similarly, Allen stated that he did not inquire as to how certain improvements got there, who put them there, and how long they had been there. Id. at 598. Thus, similar to Thompson, although there was evidence tending to show the Torrenga Survey was informative, the correctness of the Torrenga Survey was in conflict, and the trial court was entitled to accept the evidence discussed above crediting the survey's inaccuracy. Consequently, we find no error on this issue.

## II. Trial Court's Judgment Prohibited by Statute

The Trust maintains that the trial court's judgment that two previous retracement surveys control the boundaries between the Trust and the Appellees' properties is

11

prohibited by Indiana Code section 36-2-12-14.  The interpretation of statute is a question of law, which we review de novo.  State v. Int'l Bus. Mach. Corp., 964 N.E.2d 206, 209 (Ind. 2012).  Our objective when construing a statute is to determine and give effect to the legislative intent of the statute.  Chavis v. Patton, 683 N.E.2d 253, 257 (Ind. Ct. App. 1997).

When interpreting a statute, the rules of statutory construction apply.  Id.  The express language of the statute controls, and the statute is interpreted as whole, giving words their common and ordinary meaning.  Family & Social Servs. Admin. v. Calvert, 672 N.E.2d 488, 491-92 (Ind. Ct. App. 1996).  Moreover, we construe statutes in such a way as to prevent absurdity and hardship.  Id. at 492.  Therefore, we interpret provisions of an act together so that no part of it is rendered meaningless and to harmonize the provision at issue with the remainder of the statute.  Pressley v. Newburgh Town Council, 887 N.E.2d 1012, 1018 (Ind. Ct. App. 2008).

Indiana Code section 36-2-12-14 describes the process by which a property owner may appeal a survey conducted under Indiana Code section 36-2-12-10.  Upon learning that an adjacent property owner has appealed a survey, the surveyor who conducted the legal survey must transmit copies of the relevant field notes and other papers to the trial court.  I.C. § 36-2-12-14(b).  During the appeal, the trial court may hear evidence of other surveys and consider parol evidence.  I.C. § 36-2-12-14(c); see Cleveland v. Obenchain, 107 Ind. 591, 593, 8 N.E. 624, 624 (1886) ("It would produce great confusion, and work

12

much injustice, if parties could only try the correctness of a survey by the descriptions found in the conveyances").

Most at issue in this case, however, is Subsection -14(c), which provides, in relevant part:

> The court may receive evidence of any other surveys of the same premises. <u>If the court decides against the original survey, it may order a new survey to be made by a competent person</u> other than the person who did the original survey, and it shall:
>
> (1) determine the true boundary lines and corners of the lands included in the survey; and
>
> (2) order the county surveyor to:
>
>> (A) locate and perpetuate the boundary lines and corners according to the court's findings by depositing durable markers in the proper places, below the freezing point;
>>
>> (B) mark the boundary lines and corners; and
>>
>> (C) enter the boundary lines and corners in his field notes.

(emphasis added).

The Trust argues that "by the plain language of the statute, the trial court only could affirm the survey or order a new one. This is because legal surveys are subject to strict rules in Indiana." Appellant's Br. p. 12. The Appellees counter that Subsection 14(c) grants the trial court power to "receive evidence of any other surveys of the same premises." Appellees' Br. p. 6. Additionally, the Appellees point out that Subsection 14(c) states that if the trial court rejects the original survey it <u>may</u> order a new a one, but that it is not mandatory. <u>Id.</u> at 7.

13

The Trust directs us to Indiana Code section 36-2-12-10, which lists the strict requirements that must be met before a legal survey is created. The Trust argues that because the requirements of Section 10 were not satisfied by the two surveys that the trial court's order imposed on the parties in its order, Section 14 granted the trial court the authority to either accept the Torrenga Survey or order a new survey.

Indiana Code section 36-2-12-10(b) provides, in relevant part:

A landowner desiring to establish the location of the line between the landowner's land and that of an adjoining landowner by means of a legal survey may do so as follows:

(1) The landowner shall procure a land surveyor registered under IC 25-21.5 to locate the line in question and shall compensate the surveyor.

(2) The land surveyor shall notify the owners of adjoining lands that the land surveyor is going to make the survey. The notice must be given by registered or certified mail at least twenty (20) days before the survey is started.

(3) If all the owners of the adjoining lands consent in writing, the notice is not necessary.

(4) The lines and corners shall be properly marked, monumented by durable material with letters and figures establishing such lines and corners, referenced, and tied to corners shown in the corner record book in the office of the county surveyor or to corners shown on a plat recorded in the plat books in the office of the county recorder.

(5) The land surveyor shall present to the county surveyor for entry in the legal survey record book a plat of the legal survey and proof of notice to or waiver of notice by the adjoining landowners. The land surveyor shall give notice to adjoining landowners by registered or certified mail within ten (10) days after filing of the survey.

14

Landowners seeking to establish property lines pursuant to a legal survey must follow the statute to the letter. Leons v. Bloemaker, 649 N.E.2d 1041, 1043 (Ind. Ct. App. 1995). In Leons, a panel of this Court held that because notice of a survey had not been served on a wife who held property as a tenant by the entirety with her husband, who had been provided notice, "the requirements of the legal survey statute were not met. Thus, no legal survey was created." Id. at 1045.

Here, the Appellees presented no evidence that either the Turning Point Survey or the Progressive Survey satisfied the notice requirements of Section 10. Accordingly, neither created a legal survey. Moreover, the Turning Point Survey was recorded on June 14, 2004, and the Progressive survey was recorded on April 21, 2009 – well beyond the time limit to appeal these surveys. Thus, by imposing upon the Trust two surveys that were recorded beyond the ninety-day time limit to appeal the surveys, the trial court has, in effect, stripped the landowner of the right to appeal those surveys as permitted by Section 14. And as stated above, when interpreting a statute, we strive to give effect to the entire statute.

Nevertheless, the Appellees essentially argue that the trial court may impose boundary lines even in the absence of a valid survey. The Appellees focus on Section 14(c), which states:

> The court may receive evidence of any other surveys of the same premises. If the court decides against the original survey, it may order a new survey to be made by a competent person other than a person who did the original survey, and it shall:

(1) <u>determine the true boundary lines</u> and corners of the lands included in the survey; and

(2) order the county surveyor to:

(A)    locate and perpetuate the boundary lines and corners according to the court's findings by depositing durable markers in the proper places, below the freezing point;

(B)    mark the boundary lines and corners; and

(C)    enter the boundary lines and corners in his field notes.

(emphases added).

The Appellees focus on the fact that Section 14 states that the trial court "may" order a new survey if it rejects the original one and that the trial court "shall determine the true boundary lines."

When reading Section 14 as a whole, the trial court has essentially three options: (1) it may accept the original survey; (2) it may reject the original survey and it is permitted to order that a new survey be performed by a different surveyor from the surveyor who performed the original survey; (3) it may reject the original survey and order the county surveyor to locate and mark the boundary lines with durable markers in the proper places according to the trial court's findings based upon evidence presented to it, including previous surveys.

This interpretation is consistent with the language used in Section 14 and gives effect to the entire section, which we strive to do. Moreover, by requiring the trial court

16

to order the county surveyor to locate and mark the boundary lines according to its findings, in effect, establishes a new legal survey.

Here, although the trial court was well-intended, it misspoke when it concluded that:

> while the Court recognizes that it may order a new survey be made by a competent person, the [court] declines to do so for the reason that the evidence is overwhelming that the Lane Alan Schrader Trust already has in its possession two (2) surveys prepared by competent persons which clearly show the boundary lines of the Trust property. That no other adjoining property owners are disputing the boundary lines of their real estate as their property is set out pursuant to the original deed call outs and lies in relation to the Trust property as surveyed by both Turning Point Surveying, Inc., in 2004, and Progressive Engineering in 2005.

Appellant's App. p. 16.

It is clear that the trial court did not accept the Torrenga Survey and did not choose to order a new survey. Accordingly, in light of the trial court's findings, which we have already determined were not clearly erroneous, the trial court should have ordered the county surveyor to locate the boundary lines with durable markers in the proper places according to its findings that were based on the evidence. In this case, that evidence was the Turning Point Survey and the Progressive Survey. Consequently, the trial court should have ordered the county surveyor to mark the boundary lines according to the Turning Point Survey and the Progressive Survey rather than simply imposing those two surveys. Put another way, the trial court did not err by accepting the two previous surveys but skipped a step by imposing them. Therefore, we conclude that the trial court erred by imposing the two previous retracement statutes.

17

Although we conclude that the trial court did not err by rejecting the Torrenga Survey, it did err by imposing the two prior surveys. Strict notice requirements must be satisfied for a legal survey to be conducted, and no evidence was produced to show that proper notice was given before the two previous surveys were conducted. The trial court had three options: It could either accept the Torrenga Survey, order that a new survey be performed, or order the county surveyor to mark the boundary lines according to the trial court's findings as supported by the evidence. This interpretation is consistent with the language of Section 14 and harmonizes Section 10 and Section 14. Accordingly, we reverse and remand to the trial court with instructions that it enter a new order consistent with this opinion.

The judgment of the trial court is reversed and remanded with instructions.

ROBB, C.J., and BRADFORD, J., concur.