

FILED

Oct 12 2017, 11:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

John A. Kraft
Young, Lind, Endres & Kraft
New Albany, Indiana

ATTORNEYS FOR APPELLEE

J. David Agnew
Robert P. Hamilton
Lorch Naville Ward LLC
New Albany, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert K. Reinmiller Living Trust, Timothy H. Matthews and Paula C. Matthews,

*Appellants-Plaintiffs,*

v.

Jeffrey L. Metschuleit, Karen Metschuleit, Glenn Nix, and Moira Nix,

*Appellees-Defendants.*

October 12, 2017

Court of Appeals Case No.
31A01-1609-PL-2168

Appeal from the Harrison Circuit Court

The Honorable John T. Evans, Judge

Trial Court Cause No.
31C01-1408-PL-18

**Pyle, Judge.**

## Statement of the Case

[1] The Appellants/Plaintiffs, Robert K. Reinmiller Living Trust ("Reinmiller") and Timothy and Paula Matthews (collectively, "the Matthews"), filed a complaint to challenge a legal survey completed on behalf of their neighbors,

the Appellees/Defendants, Jeffrey L. and Karen Metschuleit (collectively, "the Metschuleits") and Glenn and Moira Nix (collectively, "the Nixes"). They argued that a center section line ("Center Line") established in the survey was erroneous and that the survey inappropriately included land within the Metschuleits' property boundaries that was not included in their deed's property description. The trial court issued a judgment granting in part and denying in part Reinmiller and the Matthews' (collectively, "the Appellants") requested relief. Specifically, the trial court invalidated the part of the survey that had inappropriately included land within the Metschuleits' property boundaries that they did not own according to their property deed. However, the trial court found that the survey's Center Line was valid.

[2] On appeal, the Appellants argue that the trial court erred when it granted in part and denied in part their challenge to the legal survey. With respect to the trial court's denial in part, they argue that the trial court's determination that the Center Line was valid was based on erroneous and conflicting findings. With respect to the trial court's grant in part, they assert that the trial court granted relief not authorized by INDIANA CODE § 36-2-12-14(c), the statutory provision governing "appeals" of legal surveys, because it did not have the authority to partially validate and partially invalidate a legal survey.

[3] Because we determine that the trial court's findings were not erroneous and supported its judgment that the Center Line was valid, we affirm the trial court's judgment in part. However, we agree with the Appellants that the trial court granted relief not authorized by statute. Upon rejecting part of the survey

at issue, the trial court was required to order a new survey completed by a different surveyor or to order the county surveyor to locate and mark the boundaries with durable markers in the proper places according to the trial court's findings. The trial court chose not to order a new survey but failed to order the county surveyor to locate and mark the proper boundaries according to its findings. Therefore, we reverse in part and remand with instructions for the trial court to enter a new judgment ordering the county surveyor to locate and mark with durable markings the boundaries of the Center Line that the trial court has found valid.

We affirm in part, reverse in part, and remand with instructions.

## Issues

1. Whether the trial court erred when it denied in part the Appellants' challenge to a legal survey.

2. Whether the trial court granted relief not authorized by statute by partially validating and partially invalidating a survey.

## Statement of the Facts

The parties to this appeal are adjoining and contiguous landowners in Harrison County. The Metschuleits and Reinmiller own adjacent parcels of real estate, situated so that Reinmiller's property lies to the south and the east of the Metschuleits' property. The Matthews own property to the north and east of the Metschuleits and to the north and west of Reinmiller. The Nixes own property to the north of the Metschuleits and Reinmiller and to the west of the Matthews. Victor McCauley ("McCauley"), a professional land surveyor,

surveyed the legal boundaries of the neighbors' properties, and that survey is the

subject of this appeal. McCauley depicted the boundaries of the properties as

follows:



(App. Vol. 2 at 107).

[6] Prior to McCauley's survey, a civil engineer and land surveyor, Reginald Timberlake ("Timberlake") surveyed sections of Reinmiller's land in 2005 and 2011 so that Reinmiller could log timber. Timberlake did not record either of these surveys.

[7] Subsequently, in 2012, the Nixes hired Timberlake to complete a legal survey of the Nixes', the Metschuleits', and the Matthews' properties. Each of the three sets of property owners agreed to pay 1/3 of the price for the survey. However, after Timberlake completed the survey in March of 2012, neither the Nixes nor the Metschuleits agreed with his results. They were concerned that the Center Line, which was the line that determined the boundary between the Nixes' and the Matthews' properties and the boundary between the Metschuleits' and Reinmiller's properties, was not placed where they thought it existed. (Tr. Vol. 2 at 55). They believed Timberlake's line was misplaced because it "severed" a cultivated field, ran west of an existing fence line, and ran west of where they thought it should based on where they believed remnants of an historic school were located. (Tr. Vol. 2 at 25).

[8] With respect to the school, the Metschuleits' deed describes their property as containing the "south half of the northwest quarter of Section 25, Township 1 south, Range 2 east," except for "one (1) acre out of the southeast corner thereof deeded to Blue River Township for school purposes." (App. Vol. 2 at

53). The deed described the location of the school acre as "[b]eginning at the southeast corner of said northwest quarter, running thence west along the south line of said quarter . . . ." (App. Vol. 2 at 53). The Metschuleits' property contained "remnants of a foundation" of a building on a "man-made plateau area" where they believed that the school had been located, and they believed this location was consistent with where their deed said the school acre was and was inconsistent with Timberlake's survey. (Tr. Vol. 2 at 59, 144). Timberlake's Center Line was to the west of the school acre, whereas the Metschuleits believed the Center Line should be to the east of the school acre.

[9] After receiving Timberlake's survey results, the Metschuleits wrote him letters stating that they believed the survey was incorrect and asking him to re-evaluate his Center Line, but he declined to do so. As a result, neither the Metschuleits nor the Nixes paid the 1/3 of Timberlake's charge they had agreed to pay, and Timberlake did not record the survey.

[10] Subsequently, in mid-2012, the Nixes and the Metschuleits hired McCauley to conduct the legal survey that is depicted above. McCauley completed the survey and recorded it in the Harrison County Recorder's office on June 1, 2014. His survey placed the Center Line around 150 to 165 feet to the east of Timberlake's Center Line. According to McCauley's Center Line, the Metschuleits' eastern property boundary coincided with the eastern boundary of the cultivated field that Timberlake's Center Line had "severed." (Tr. Vol. 2 at 25). However, McCauley also included the one-acre school property within the Metschuleits' property boundaries, even though it was excepted from the deed,

as well as a 7.575 acre parcel of land ("7.575-acre parcel") that was not included in their deed's property description and did not appear to have an identified owner.

[11] On August 12, 2014, the Appellants (Reinmiller and the Matthews) filed a complaint challenging McCauley's survey under INDIANA CODE § 36-2-12-14, which allows owners of property surveyed to "appeal" that survey to the circuit court, superior court, or probate court for the county. They argued that McCauley's survey reflected "different lines" than previous surveys had and requested that the trial court set aside the survey. (App. Vol. 2 at 24).

[12] The trial court held a bench trial on April 22 and July 13, 2016. At trial, both Timberlake and McCauley testified regarding their respective Center Line placements. McCauley testified that when completing this type of legal survey, a retracement survey, the goal is to "retrace the descriptions of the property" or "follow the retracement of a deed." (Tr. Vol. 2 at 28, 42). He further explained that, in determining where a property's boundaries should exist "on the ground," surveyors consider a "hierarchy" of landmarks. (Tr. Vol. 2 at 45). First, a surveyor looks at the deed, then "natural monument[s]" such as "a cliff, creek, valley, something natural." (Tr. Vol. 2 at 42). Next on the hierarchy, according to McCauley, a surveyor examines "artificial monuments," such as roads, fence lines, [and] tree lines." (Tr. Vol. 2 at 42-43). McCauley also explained:

> In between natural monuments and artificial monuments [are] surveyor monuments that are placed. Then after artificial

monuments you go down to bearings, distances. . . . [Y]ou go on down to testimony by long time landowners, parole evidence, . . . and then at the bottom when all else fails you calculate by acreage.

(Tr. Vol. 2 at 43).

[13] Within the context of the current case, McCauley testified that he believed the "cultural features and the occupation" of the parties' properties "pretty much supported the deeds." (Tr. Vol. 2 at 29). He concluded that it was "quite obvious on the ground that the survey markers from Mr. Timberlake's survey [had] missed the old fence lines, the foundation, the cemetery, old roads by – he was about 150 to 160 feet west of the existing occupation." (Tr. Vol. 2 at 29). McCauley based his placement of the Center Line on his review of the historical documents and deeds and his conclusion that the Center Line was supposed to be to the east of the school acre as the deed specified that the school acre was in the southeast corner of the northwest quarter. He identified that the school acre, on the ground, existed where there were remnants of building foundation on the Metschuleits' property. McCauley testified that it was "not difficult to figure out where the school was at" on the ground because the foundation remnants included "parts of maybe the chimney" and "lots of . . . foundation type rocks[] spewed all over the area." (Tr. Vol. 2 at 60).

[14] In addition to the placement of the school acre, McCauley also believed that his placement of the Center Line was supported by other cultural features. Next to the school, the Center Line was consistent with the location of a cemetery and

coincided with a quarter-mile of old fencing. It also formed the eastern boundary of the cultivated field that Timberlake's Center Line had severed by "about a hundred and fifty feet or so." (Tr. Vol. 2 at 62). McCauley testified that, along the portion of the Center Line that followed the old fencing, he had located a "pinnacle type limestone[,] [a stone that] a lot of the old surveyors used to plant for corners" in a location consistent with a corner described in the Matthews' deed. (Tr. Vol. 2 at 63). Specifically, the Matthews' deed described a "stone marking the southeast corner of the northeast fourth of the Nor[th]west quarter of section 25." (Tr. Vol. 2 at 66).

[15] With respect to the northeastern diagonal boundary of the Nixes' property, McCauley acknowledged that the property line intersecting with the Blue River was supposed to be marked by an elm tree. He testified that he had not found an elm tree in the location where he believed it should be according to his placement of the Center Line. At the location where he calculated the elm should be, the river bank had "sloughed off," so he concluded that the tree had "washed into the river." (Tr. Vol. 2 at 76). He also testified that he did not find an elm tree "at the terminus of Mr. Timberlake's line," either. (Tr. Vol. 2 at 83).

[16] Although the placement of the Center Line was the primary subject of McCauley's testimony at trial, he also admitted that he had included two separate parcels of land—the one-acre school parcel and the 7.575-acre parcel— in the Metschuleits' property boundaries even though they were not included in the Metschuleits' property deed. His basis for including the school property in

the Metschuleits' boundaries was that the Metschuleits were "going to claim the property . . . after this is done, even by adverse possession or by other means." (Tr. Vol. 2 at 45).

[17] Timberlake testified at trial and explained that his Center Line was based on two stones he had found when he completed his 2005 survey of Reinmiller's property. Although the 2005 survey concerned property to the south of the land surveyed in the instant case, Timberlake believed that the stones established lines and corners that were relevant to his placement of his Center Line here. Specifically, the stones were 1320 feet apart, or "a normal quarter mile," which "very seldom ever happens," and the stone to the east ("Eastern stone") had a "plus on the top," which Timberlake thought meant someone had "marked it" previously. (Tr. Vol. 2 at 111, 112, 113). The stones formed an east-west line, and the Eastern stone was located approximately in the location that McCauley labeled with a diamond and "see report" on his later survey. The stone to the west ("Western stone") was located where McCauley identified the "east sixteenth corner" on his survey. (Tr. Vol. 2 at 112-13). Timberlake testified that he had verified the lines and corners these two stones formed because directly north of the Western stone, he found a "stone marked with a survey ribbon" ("Northern stone"). (Tr. Vol. 2 at 119). This stone was the equivalent of "L3" on McCauley's survey. *See* (App. Vol. 2 at 111). Timberlake further explained that he had established the Center Line in his later survey as the line formed between the Western stone and the Northern stone.

[18]    Timberlake also testified that he had found other evidence supporting his placement of the Center Line. Specifically, where he had calculated that the elm tree by the Blue River should be, he had found a tree that "was root wadded down into the river." (Tr. Vol. 2 at 160). Also, the northern portion of his Center Line followed an old road. As for the Metschuleits' and the Nixes' concerns regarding the old school foundation, Timberlake testified that they had "raised some serious questions" that he had not "take[n] lightly" but that he had ultimately concluded that his Center Line was correct. (Tr. Vol. 2 at 127). He explained that:

> The fact that the school is either east or west of the line does not control my line. Now the fact that a deed calls for it to be [on] one particular side definitely gets my attention. But in the course of the years that I [have] spent doing this, I've seen people build houses across the line. . . . If someone can build a house across the line, what about an old school building a hundred years ago[?]

(Tr. Vol. 2 at 128).

[19]    At the conclusion of the trial, the trial court issued an order granting the Appellants' appeal of McCauley's survey in part and denying it in part. Specifically, the trial court found that McCauley had correctly identified the Center Line and ruled that his identification of the Center Line was "valid and confirmed." (App. Vol. 2 at 22) (emphasis removed). However, the trial court held that the survey was "partially invalid" in so far as it attempted to establish

the Metschuleits as owners of the one-acre school parcel and the 7.575-acre parcel. (App. Vol. 2 at 22) (emphasis removed). The Appellants now appeal.

# Decision

[20] On appeal, the Appellants argue that the trial court erred when it granted in part and denied in part their appeal of McCauley's survey. In their challenge to the trial court's denial in part of the appeal, they assert that the trial court erred because its findings conflicted or were erroneous and did not support its conclusion that McCauley's Center Line was valid. With respect to the trial court's grant in part of their appeal, they contend that the trial court erred because it did not have statutory authority to only partially invalidate a survey. We will address each of these issues in turn.

[21] Preliminarily, though, we note that the trial court entered findings of fact and conclusions of law thereon. Accordingly, we must conduct a two-tiered standard of review. *Lane Alan Schrader Trust v. Gilbert*, 974 N.E.2d 516, 521 (Ind. Ct. App. 2012), *decision clarified on reh'g*, 978 N.E.2d 519 (2012). First, we determine whether the evidence supports the findings, and then we determine whether the findings support the judgment. *Id.* We will not set aside the trial court's findings unless they are clearly erroneous, meaning that they are unsupported by facts in the record or reasonable inferences drawn from the facts. *Id.* When determining whether findings are clearly erroneous, we neither reweigh the evidence nor judge the credibility of witnesses and consider only the evidence supporting the judgment. *Id.* We may affirm the judgment on any

legal theory supported by the findings. *Id.* We review questions of law *de novo*. *Id.* at 522.

## 1. Denial in Part

First, the Appellants challenge the trial court's denial in part of their appeal of McCauley's survey. They argue that the trial court's denial in part was erroneous because its findings did not support its conclusion that McCauley's identification of the Center Line was valid. We divide their contentions into two broad arguments: (1) that the trial court erred when it found that McCauley had properly surveyed the properties because McCauley did not properly follow the statutory procedure for a legal survey; and (2) the trial court's findings regarding the placement of the Center Line in relation to the school acre conflicted with each other. The Appellants' remaining arguments are requests to reweigh the evidence, which we will not do. *See id.*

In support of the Appellants' first broad argument, they direct us to 865 INDIANA ADMINISTRATIVE CODE § 1-12-10, which provides:

> When conducting a retracement or original survey, a land surveyor shall do the following:
>
> (1) Search for controlling physical monuments and, when found, weigh their reliability.
>
> (2) Search for and locate the following:
>
>> (A) Monuments that reference missing control monuments.

(B) Monuments that substantiate control monuments that have been obliterated.

(C) Other monuments and real evidence that are necessary to the survey.

(3) If necessary:

(A) investigate possible parol evidence supporting the positions of obliterated control monuments; and

(B) obtain the necessary affidavits or affidavits from individuals involved.

(4) Obtain the following:

(A) Necessary measurements to correlate all found evidence, including the relationship to adjoining properties.

(B) Sufficient check measurements to satisfactorily verify the work.

(5) Locate physical evidence of possession between adjoiners and identify age of possession, for example, by parol evidence, if possible.

\*　　\*　　\*

(7) Any controlling corners that are original public land surveyor corners or other government corners such as land grants shall be:

(A) evaluated;

(B) perpetuated;

(C) documented;

in accordance with section 30 of this rule.

The Appellants assert that McCauley failed to "search" for controlling physical monuments as required by 865 IAC § 1-12-10, failed to investigate parol evidence supporting the positions of the obliterated control monuments, and inappropriately established new monuments. We disagree. To the contrary, there was evidence to support the trial court's finding and conclusion that McCauley completed a valid legal survey.

[24] The primary controlling physical monument the Appellants claim McCauley failed to "search" for was the elm tree that was supposed to form a boundary to the Nixes' property along the Blue River. They admit that he "looked for" the elm tree but claim that there is a difference between "searching for" a tree and "looking for" a tree. (Appellants' Br. 17). They also claim that he should have investigated parol evidence to find the "obliterated control monument[]," the elm tree, such as by hiring an "arborist, ecologist, pedologist, potamologist, or other specialist to locate this very important tree." (Appellants' Br. 18). Because he did not find the tree, they also claim that he failed to weigh its reliability.

[25] When we interpret administrative regulations, the rules of statutory construction apply. *Ind. Family & Social Servs. Admin. v. Pickett*, 903 N.E.2d 171, 176 (Ind. Ct. App. 2009), *reh'g granted on other grounds*. The express language of the regulation controls, and the regulation is interpreted as a whole, giving words their plain and ordinary meaning. *Id.* Moreover, we construe statutes and regulations in such a way as to prevent absurdity and hardship. *Id.*

[26] In the context of the Appellants' argument, we do not find a significant difference between the common and ordinary meanings of "search for" and "look for." Both express the sentiment that, as the Appellants acknowledge, McCauley attempted to find the elm tree. As for their contention that he should have hired a specialist, the Administrative Code does not mandate any such requirements, and it seems possible that doing so would create "absurdity and hardship." *See id.*

[27] The Appellants also contend that "McCauley did not evaluate the evidence properly as required by the rule" with respect to the school acre because he did not find definitive proof that the foundation remnants on the Metschuleits' property were, in fact, the remnants of the old school. (Appellants' Br. 19). However, the Appellants do not clarify what evidence they think McCauley should have evaluated that would have produced definitive proof that the foundation remnants were the remnants of the school. Further, there was evidence that McCauley did properly evaluate the evidence. He stated that he received "testimony of the clients" and researched "old photographs" and "newspaper articles." (Tr. Vol. 2 at 25). He also testified that he researched the county surveyor's records, the auditor's records, the chain of title, and the deeds, to the extent that he "went back to the mid-1800's for locating the school deeds when that was initially deeded out as a school." (Tr. Vol. 2 at 26). On the ground, he searched for controlling monuments and determined that there was "cultural evidence" supporting the location of the school, including a half mile of fencing, an old road, and the location of a cemetery. (Tr. Vol. 2 at 57).

He also determined that the deeds indicated that the foundation was "exactly where [the school was] supposed to [have been]." (Tr. Vol. 2 at 57). Thus, there was evidence in the record to support the trial court's conclusion that McCauley properly conducted his survey and evaluated the evidence.[1]

[28] The Appellants' second broad argument—that the trial court's findings conflicted—also relates to McCauley's determination of the placement of the Center Line in relation to the school acre. The trial court found that McCauley's Center Line placement was correct but that he should have excluded the school acre from the Metschuleits' property boundaries because it was excepted from their deed. The Appellants assert that these two findings are inconsistent because McCauley's placement of the Center Line automatically "includes" the school acre in the Metschuleits' property, whereas "[t]he Timberlake line, which the court did not follow, would properly exclude the School Property" because the school acre would be to the east of the Center Line and the Metschuleits' property boundary. (Appellants' Br. 21).

[29] We do not find these findings inconsistent. If the school acre were not within the boundaries of what would be considered the Metschuleits' property according to the placement of the Center Line, then there would be no reason to except the property from their ownership in the deed. Under Timberlake's

---

[1] The Appellants also argue that McCauley based his placement of the Center Line on his clients' wishes rather than controlling monuments. This is a request to reweigh the evidence as McCauley testified that "the cultural features and the occupation" he based his survey upon "pretty much supported the deeds." (Tr. Vol. 2 at 29).

Center Line placement, the school acre would have been clearly outside of the Metschuleits' property boundaries and within Reinmiller's property boundaries, leaving no reason for the Metschuleits' deed to mention the parcel. Accordingly, the trial court's findings are consistent.

## 2. Grant in Part

[30] Next, the Appellants argue that the trial court erred when it validated McCauley's Center Line placement but invalidated McCauley's inclusion of the one-acre school parcel and the 7.575-acre parcel within the Metschuleits' property boundaries without ordering a new survey. They contend that the trial court did not have the statutory authority to partially validate and partially invalidate a survey. We agree.

[31] INDIANA CODE § 36-2-12-14(c) governs appeals of legal surveys. It provides that:

> If the court decides against the original survey, it may order a new survey to be made by a competent person other than the person who did the original survey, and it shall:
>
>> (1) determine the true boundary lines and corners of the lands included in the survey; and
>>
>> (2) order the county surveyor to:
>>
>>> (A) locate and perpetuate the boundary lines and corners according to the court's findings by depositing durable markers in the proper places, below the freezing point;
>>>
>>> (B) mark the boundary lines and corners; and

(C) enter the boundary lines and corners in the county surveyor's field notes.

I.C. § 36-2-12-14(c). In *Lane Alan Schrader Trust*, we interpreted this provision as providing the trial court with three options in an appeal of a survey:

> (1) it may accept the original survey; (2) it may reject the original survey and it is permitted to order that a new survey be performed by a different surveyor from the surveyor who performed the original survey; [or] (3) it may reject the original survey and order the county surveyor to locate and mark the boundaries with durable markers in the proper places according to the trial court's findings based upon evidence presented to it, including previous surveys.

*Lane Alan Schrader Trust*, 974 N.E.2d at 524.

[32] Our holding in *Lane Alan Schrader Trust* is instructive here. There, a landowner appealed a legal survey and introduced into evidence two previous surveys that contradicted the legal survey at issue. *Id.* at 519-20. The trial court held that there was no evidence of the validity of the two previous surveys because there was no evidence that the surveyors had satisfied the statutory notice prerequisites for creating a valid survey. *Id.* at 524. Nevertheless, the trial court rejected the legal survey at issue, declined to order a new survey completed, and ruled that the prior two surveys had clearly and validly delineated the property boundaries. *Id.* at 524-25.

[33] On appeal, the appellant argued that the trial court's only options by statute had been to affirm the survey or order a new one, not to accept boundaries without

a valid survey. *Id.* at 523. We disagreed and interpreted the statute as providing the trial court with the three options listed above. *Id.* at 524. As a result of this interpretation, we concluded that the trial court had had the authority to determine proper legal boundaries based on the evidence presented to it, even if that evidence was not consistent with a valid survey. *See id.* at 525. However, in that eventuality, the trial court had been required to "order[] the county surveyor to locate the boundary lines with durable markers in the proper places according to its findings." *Id.* Accordingly, we concluded that the trial court had erred by imposing the boundaries listed in the two previous surveys without ordering the county surveyor to mark the boundary lines according to the surveys. *Id.* Doing so would have "in effect, establish[ed] a new legal survey." *Id.* at 525. We explained that, "[p]ut another way, the trial court [had] not err[ed] by accepting the two previous surveys but [had] skipped a step by imposing them." *Id.*

[34] Based on our holding in *Lane Alan Schrader Trust*, we conclude that the trial court here had the authority to determine that McCauley's Center Line was valid based on the evidence before it, even though it also partially invalidated McCauley's survey. However, as in *Lane Alan Schrader Trust*, the trial court "skipped" the step of ordering the county surveyor to locate the boundary lines with durable markers, thereby establishing a new legal survey. *See id.* Absent this step, McCauley's survey, with its partially invalidated boundary lines, is still recorded at the Harrison County Recorder's Office, and, as the Appellants note, cannot give future interested parties proper notice of the properties' legal

boundaries. As the trial court, thus, granted relief not authorized by statute, we determine that it erred by rejecting part of McCauley's survey without ordering a different surveyor to complete a new survey or ordering the county surveyor to mark the boundaries with durable markers in the proper places according to its findings. We reverse this specific part of the trial court's order and remand with instructions for the trial court to vacate this portion of its judgment. Because the trial court chose to enter findings on the correct placement of the Center Line without ordering a new survey, we also remand with instructions for the trial court to order the county surveyor to locate the Center Line with durable markers in the proper place according to its findings.

[35] Affirmed in part, reversed in part, and remanded with instructions.

[36] Baker, J., and Mathias, J., concur.