ATTORNEY FOR APPELLANTS

Glen E. Koch II
Boren, Oliver & Coffey, LLP
Martinsville, Indiana

ATTORNEY FOR APPELLEES

Andrew W. Foster
The Law Office of Andrew W.
Foster, LLC
Rockport, Indiana



FILED
Sep 11 2020, 7:52 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Richard D. Moseley and Lisa M. Moseley,<br><br>*Appellants-Defendants,*<br><br>v.<br><br>Trustees of Larkin Baptist Church and the Larkin Baptist Church, an unincorporated association,<br><br>*Appellees-Plaintiffs.* | September 11, 2020<br><br>Court of Appeals Case No. 20A-PL-98<br><br>Appeal from the Spencer Circuit Court<br><br>The Honorable Mark R. McConnell, Judge<br><br>Trial Court Cause No. 74C01-1710-PL-544 |

**Najam, Judge.**

## Statement of the Case

[1] Richard Moseley and Lisa Moseley appeal the trial court's order granting summary judgment for the Trustees of Larkin Baptist Church and the Larkin Baptist Church, an unincorporated association (collectively "the Church") on

the Moseleys' adverse possession counterclaim in the Church's action to quiet title. The Moseleys present a single issue for our review, namely, whether the trial court erred when it entered partial summary judgment in favor of the Church. We affirm.

## Facts and Procedural History

[2] In 1991, the Moseleys bought a home in Rockport on a one-acre parcel next to the Church. Between 1991 and 2017, Richard regularly mowed and maintained a grassy area located along their common boundary line, which would later become the subject of a quiet title action by the Church (the "disputed area"). Richard would also park different vehicles at various times on a small portion of the disputed area.

[3] In early 2017, the Church commissioned a survey of its property, and the survey indicated that the Church owned the disputed area. The Church's pastor and a trustee spoke with Lisa and showed her the location of the property line between the two properties. Soon thereafter, Richard installed fence posts along the edge of the disputed area. Accordingly, on March 28, the Church wrote the Moseleys a letter asking them "to respect the property lines" between the properties and to "cease and desist the trespassing" on the Church's property. Appellants' App. Vol. 2 at 185. A few months later, Richard completed the fence along the edge of the disputed area.

[4] On October 26, 2017, the Church filed a complaint against the Moseleys alleging trespass, conversion, and nuisance and seeking to quiet title to the

disputed area. On October 30, the Moseleys filed a complaint to quiet title and for adverse possession. The two actions were then consolidated and the Moseleys' complaint was converted to a counterclaim.

[5] In a deposition, Richard testified in relevant part as follows:

> Q: You say in your [counterclaim] against the church . . . that you have actively and continuously occupied the [disputed area]. Can you tell me how you have occupied the [disputed area]?
>
> A: I've mowed it; I've tended to it; I've used it for parking; I've dr[iven] on it. Everything about that property I have taken care of. If there was trash on it, I picked it up. If a tree limb fell on it, I cleaned it up.
>
> Q: Aside from what I'll describe as the maintenance issues of the property, tell me how it's been physically occupied. You would agree it's not been physically occupied except for some of your vehicles at various times.
>
> A: Physical as in?
>
> Q: You haven't built anything on it.
>
> A: No.
>
> Q: There's no structure on it.
>
> A: No.
>
> Q: There's no fence on it. There wasn't a fence on it prior to 2017.
>
> A: Correct.

Q: So the only use you would've had of that, for purposes of using land, would be to park some vehicles at various times.

A: And maintain it; yes.

*Id.* at 69-70.

In October 2018, the Church moved for summary judgment on the Moseleys' adverse possession counterclaim. In January 2019, the trial court granted summary judgment on the counterclaim in favor of the Church following a hearing. In November 2019, the trial court held a bench trial on the Church's complaint. On November 27, the court issued a partial judgment in favor of the Church on the trespass and quiet title claims. And on December 16 the court issued a final judgment on the remaining claims and awarded the Church $1,300 in damages and $18,000 in attorney's fees. This appeal of the trial court's January 2019 summary judgment order on the Moseleys' adverse possession counterclaim ensued.

## Discussion and Decision

The Moseleys appeal the trial court's grant of summary judgment in favor of the Church on their adverse possession counterclaim. Our standard of review in an appeal from summary judgment is clear:

> We review summary judgment de novo, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law.'" *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id.* (internal citations omitted).

The initial burden is on the summary-judgment movant to "demonstrate [ ] the absence of any genuine issue of fact as to a determinative issue," at which point the burden shifts to the non-movant to "come forward with contrary evidence" showing an issue for the trier of fact. *Id.* at 761-62 (internal quotation marks and substitution omitted). And "[a]lthough the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court." *McSwane v. Bloomington Hosp. & Healthcare Sys.*, 916 N.E.2d 906, 909-10 (Ind. 2009) (internal quotation marks omitted).

*Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014) (alterations original to *Hughley*).

[8] Initially, we note that the Church owns the record title to a tract containing 3.5 acres and the Moseleys own the record title to an adjacent tract containing 1.0 acre. Both parties employed land surveyors who agreed that the disputed area is located within the Church's legal description and that no part of the disputed area is located within the Moseleys' legal description. The Moseleys' surveyor found no discrepancies in the legal descriptions, that the deeds to the two

properties are "consistent," and found the survey of the Church's surveyor "to be correct." Appellants' App. Vol. 2 at 65-66.

[9] The Moseleys abandoned their contention that the disputed area is located within their legal description and, thus, their counterclaim to quiet title. In his deposition, Richard testified he understood that the legal description in his deed does not include the disputed area but that he "always believed that property was [his]." *Id.* at 77. Thus, the Moseleys do not seek to establish ownership of the disputed area upon the strength of their own title but entirely by adverse possession.

[10] Under Indiana Trial Rule 56, "[a] trial court's findings and conclusions offer insight into the rationale for the court's judgment and facilitate appellate review but are not binding on this Court." *Denson v. Estate of Dillard*, 116 N.E.3d 535, 539 (Ind. Ct. App. 2018). Here, in its summary judgment order the trial court found that:

> The facts most favorable to [the Moseleys] are that the area in question is a grassy area and that they performed yard maintenance such as cutting grass, and generally cleaning up for a period exceeding ten years. They also parked vehicles on the property dozens of times between 1991 and 2016.

Appellants' App. Vol. 2 at 220. The trial court also found that the different vehicles, which the Moseleys parked on numerous occasions, occupied only "a small portion" of the disputed area. *Id.* And the trial court concluded that neither the yard maintenance activities nor the periodic or sporadic use of a

small portion of the disputed area constituted the control required to establish adverse possession by clear and convincing evidence as a matter of law. We must agree.

[11] But the Moseleys contend that there are genuine issues of material fact that preclude summary judgment for the Church on their adverse possession counterclaim.[1] In *Fraley v. Minger*, our Supreme Court redefined adverse possession and held that

> the doctrine of adverse possession entitles a person without title to obtain ownership to a parcel of land upon clear and convincing proof of control, intent, notice, and duration, as follows:
>
> (1) Control—The claimant must exercise a degree of use and control over the parcel that is normal and customary considering the characteristics of the land (reflecting the former elements of "actual," and in some ways "exclusive," possession);
>
> (2) Intent—The claimant must demonstrate intent to claim full ownership of the tract superior to the rights of all others, particularly the legal owner (reflecting the former elements of "claim of right," "exclusive," "hostile," and "adverse");
>
> (3) Notice—The claimant's actions with respect to the land must be sufficient to give actual or constructive notice to the legal owner of the claimant's intent and exclusive control (reflecting

---

[1] The Moseleys do not appeal from the trial court's judgment on the Church's complaint. Rather, they appeal only the entry of partial summary judgment for the Church following the court's entry of final judgment.

the former "visible," "open," "notorious," and in some ways the "hostile," elements); and,

(4) Duration—the claimant must satisfy each of these elements continuously for the required period of time (reflecting the former "continuous" element).

829 N.E.2d 476, 486 (Ind. 2005). These elements must be satisfied for a period of ten years. *Hoose v. Doody*, 886 N.E.2d 83, 92 (Ind. Ct. App. 2008), *trans. denied*; Ind. Code § 34-11-2-11 (2020). In addition, Indiana Code Section 32-21-7-1 provides that

> possession of the real property is not adverse to the owner in a manner as to establish title to the real property unless the adverse possessor pays all taxes and special assessments that the adverse possessor reasonably believes in good faith to be due on the real property during the period the adverse possessor claims to have adversely possessed the real property.

[12] Here, in its motion for summary judgment on the Moseleys' counterclaim for adverse possession, the Church designated evidence showing that it has owned the disputed area since 1973 and that it has mowed the disputed area and used it for recreational activities since at least 1991. The Church also designated evidence that, while Richard "occasionally parked vehicles" on the disputed area, he did not park vehicles there "continuously for any length of time." *Id.* at 107. As the summary judgment movant, the Church was required to negate at least one element of the Moseleys' adverse possession counterclaim. The Moseleys do not dispute on appeal that the Church satisfied this initial burden.

Accordingly, the burden shifted to the Moseleys to present contrary evidence showing an issue for the trier of fact. *See Hughley*, 15 N.E.3d at 1003.

[13] On appeal, the Moseleys assert that, in opposition to summary judgment, they designated evidence to satisfy each of the elements of adverse possession. The Moseleys designated evidence that: in 1991, survey stakes were present indicating that the disputed area was a part of their property; the Church had mowed up to the location of the stakes outside of the disputed area; since 1991, Richard had mowed and maintained the disputed area regularly; since 1991, Richard has, "at various times," parked vehicles on the disputed area; when the Church installed a new septic system, Richard told the installer not to encroach on the disputed area; when, in 2016, the Church mowed the disputed area twice, Richard told the person mowing to stop mowing the disputed area; Richard reasonably believed that his property tax payments included the disputed area; and a local resident who knew the Moseleys had seen vehicles belonging to Richard parked on the disputed area "many times" over fifteen years. Appellants' App. Vol. 2 at 141, 215. While this evidence may tend to show Richard's subjective belief or intent, the only designated evidence showing actual use of the disputed area is that Richard mowed and maintained the area and parked different vehicles on a small portion of the area "at various times" since 1991. *Id.* at 141. Such occasional use is not equivalent to actual control.

[14] Our Supreme Court has held that, "while maintenance activities in a residential area are a factor in a property dispute, standing alone, they are not sufficient to

support a divestiture of property based upon adverse possession." *McCarty v. Sheets*, 423 N.E.2d 297, 300-01 (Ind. 1981). And the Court has also held that "plowing, grading, seeding, mowing, fertilizing, planting a small tree and placing a water meter on [disputed] property are not enough to establish adverse possession." *Beaver v. Vandall*, 547 N.E.2d 802, 803-04 (Ind. 1989). In *Beaver*, the Court noted that "no fence was ever built or maintained on the disputed property, no permanent structures were erected on said land, [and] no temporary structure existed on said land for the required ten years. . . ." *Id.* at 804. Here, given that the Moseleys' use of the disputed area included no structures, either permanent or temporary, for a ten-year period and consisted only of yard maintenance and the intermittent parking of different vehicles, their designated evidence is insufficient to create a genuine issue of material fact.

[15] Still, the Moseleys contend that their designated evidence is distinguishable from the evidence in *McCarty* and *Beaver* because "the pattern of mowing was visibly different" and Richard "parked various vehicles in the disputed area at various times . . . [and] for a considerable amount of time." Appellants' Br. at 14, 16. The Moseleys maintain that their occupation of the disputed area is analogous to that in *Celebration Worship Center, Inc. v. Tucker*, 35 N.E.3d 251 (Ind. 2015). In *Celebration Worship Center*, homeowners who lived next door to a church had used and maintained a gravel driveway near the property line for approximately thirty years. The mother of one of the homeowners testified as follows:

> During my ownership of the Real Estate and my use of the gravel drive, *I controlled the activities thereon, and even paid for maintenance of the gravel driveway, including purchase of gravel and spreading of the same on the gravel drive*, and I continuously maintained my yard over to the gravel, and at no time did the church neighbor cut the grass or do any other maintenance to what was my yard and what is now claimed to be the yard of my daughter.

*Id.* at 256 (emphasis added). And our Supreme Court observed that there was "no evidence countering [that] sworn testimony that she, 'along with other members of [her] family, continuously used, controlled and occupied the Real Estate' for over thirty years." *Id.* at 257.

[16] The Moseleys' reliance on *Celebration Worship Center* is unpersuasive. The Moseleys did not maintain any structure or any improvement akin to a gravel driveway within the disputed area, and they do not cite any authority that a different "pattern of mowing" would establish possession of the area. Appellants' Br. at 14. This Court has held that "periodic or sporadic acts of ownership are not sufficient to constitute adverse possession." *Thompson v. Leeper*, 698 N.E.2d 395, 398 (Ind. Ct. App. 1998). Adverse possession cases are fact-sensitive and must be decided on an individual basis. *Id.* There is a substantial and material difference between the occasional, periodic, and intermittent use here and the continuous use, control, and occupancy described by our Supreme Court in *Celebration Worship Center*.

[17] The Church designated evidence in support of summary judgment sufficient to negate the control element of the Moseleys' adverse possession counterclaim.

In response, the Moseleys did not designate evidence sufficient to create a genuine issue of material fact. Accordingly, we hold that the trial court did not err when it entered summary judgment for the Church on the Moseleys' adverse possession counterclaim.

[18] Affirmed.

Bradford, C.J., and Mathias, J., concur.